M. HANDLEY et al., Respondents, v. ANACORTES ICE COMPANY et al., Appellants.[1]

[1]Reported in 105 P. (2d) 505.

*Henderson & McBee,* for appellants.

*John W. Brisky* and *Welts & Welts,* for respondents.

Beals, J.—This action was instituted against Anacortes Ice Company, a corporation, and Ralph Oakley, as defendants, by the mother of Reinhard Lehne, a

minor, as his guardian *ad litem,* and by the mother, K. Handley, and her husband, M. Handley, step-father of the minor, for the purpose of recovering damages on behalf of the minor for personal injuries suffered by him, and also for the purpose of recovering judgment for medical and surgical expenses incurred by the parents on behalf of the minor.

As disclosed by the record, the following facts may be said to be undisputed: The central labor council of Anacortes (which will hereinafter be referred to as the council) staged a Labor Day celebration at an athletic field in the city of Anacortes, on Labor Day, 1937. The festivities commenced early in the afternoon, with bicycle races, tug-of-war, and some amusing acts, concluding with a baseball game. Defendant Ralph Oakley was chairman of the council's refreshment committee, and, it having been advertised that children attending the celebration would receive free ice cream, Mr. Oakley ordered from defendant company fifteen gallons of ice cream in bulk, a quantity of ice cream bars, and some soft drinks. It was proposed that the bulk ice cream should be given to the children in cups or cones, while the ice cream bars and soft drinks would be sold.

At about one o'clock in the afternoon, a truck, referred to as a "pick-up," belonging to defendant company, containing the supplies above referred to, arrived at the field, where it was met by Mr. Oakley, who stepped on the running board of the truck and indicated to the driver the spot where the truck should be parked. This place was near the baseball diamond, approximately twenty-five feet outside the diamond, and a little over half way from the home plate to third base. No protection for the truck by way of a screen or otherwise was provided. A small railing was put in position beside the truck, to keep the chil-

dren in single file while approaching to receive their free ice cream. Oakley was in charge of the distribution of the ice cream, assisted by other members of the council.

It appears that the first quantity of ice cream was soon exhausted, and a further quantity was ordered, which was delivered by appellant to some members of the council, at the entrance to the athletic field, and by them carried by hand to the place where the truck was parked. Apparently, it was during the dispensing of this second lot of ice cream that respondent Reinhard was injured. The portion of the truck in which the containers carrying the ice cream were placed was refrigerated, so as to keep the ice cream from melting. Some witnesses testified that the containers were, by Oakley and other persons assisting him, lifted to the ground as needed, opened, and the ice cream removed in small quantities for the individuals who were to receive the same, while there is some testimony that the ice cream was scooped out of the containers while the latter were still in the truck. It is immaterial which method was followed.

Free ice cream was given to the children during the first part of the festivities, some witnesses testifying that all the free ice cream was passed out prior to the beginning of the ball game, while others testified that it was still being distributed after the ball game commenced. In any event, during the progress of the game, ice cream bars and soft drinks were being dispensed from the truck, or by hawkers.

After the conclusion of the first portion of the program, it was requested over the loudspeaker that the field be cleared, and shortly thereafter the ball game commenced. During the fourth inning, plaintiff Reinhard Lehne was standing near the truck, when a batter struck a fast foul ball, which hit the lad on the head,

seriously injuring him. Plaintiff suffered a skull fracture, which necessitated a serious surgical operation, the lad's parents incurring other medical and surgical expenses.

In the amended complaint, the defendants and each of them were charged with negligence in placing the truck in a dangerous position near the baseball diamond, and in leaving the same there after the game commenced, knowing that children and other persons would approach the truck for the purpose of procuring ice cream. Defendants were also charged with negligence in failing to provide any screen or protection to prevent batted balls from injuring persons in and around the truck; in failing to cause the truck to be removed to a safe place after the ball game commenced; and in dispensing ice cream and soft drinks from the truck on the side toward the home plate, so as to expose persons frequenting the truck to injury during the progress of the game.

The defendants answered the complaint separately, the company denying all negligence on its part and affirmatively pleading that, on the day in question, it had loaned its truck to the council, and that, during the progress of the festivities mentioned in plaintiffs' complaint, the truck was under the exclusive supervision and control of the council.

The issues having been fully made up, the action was tried to a jury, which returned a verdict in plaintiffs' favor and against both defendants. Motions for judgment in defendants' favor notwithstanding the verdict, or in the alternative for a new trial, having been denied, judgment was entered on the verdict, from which the defendants have appealed.

Appellant Anacortes Ice Company will be referred to herein as appellant, and Mr. Oakley will be referred to either as Oakley or appellant Oakley.

Appellant assigns error upon the denial of its motion for nonsuit, and upon the denial of its motion for a directed verdict. Appellants jointly assign error upon the giving of certain instructions; upon the refusal to give one proposed instruction; and upon the denial of their motions for judgment notwithstanding the verdict or, in the alternative, for a new trial.

The first question is whether the record supports the jury's verdict against appellant, which, of course, can stand only if some officer or agent of appellant, by his acts, rendered appellant liable for the damages suffered by respondents.

Respondents contend that appellant Oakley, who it is admitted directed the parking of appellant's truck and supervised the distribution of the ice cream, was acting as appellant's agent. In support of this contention, respondents argue that a presumption of agency arose from the fact that the truck was admittedly owned by appellant and used in its business. It is admitted that, after the ball game, Oakley drove the truck back to appellant's place of business.

The truck was driven to the field before the commencement of the exercises, by appellant's driver, who was accompanied by a helper. As above stated, the truck was parked at a place selected by appellant Oakley and Vernon Pierce, the general chairman of the council, who was in charge of the festivities. It clearly appears that appellant's truck driver had nothing whatever to do in connection with the selection of the place where the truck should be parked, but merely drove it to that spot under Oakley's direction. After the truck was parked, the driver, leaving his keys in the truck, with his fellow employee, according to their evidence, returned to appellant's plant, the driver having accomplished his mission and obeyed

the instructions given him to take the truck to the field and turn it over to Oakley.

It appears that, prior to Labor Day, a representative of the council had arranged with appellant's president for the purchase of the ice cream and soft drinks, and for the use of the truck as a storage depot during the celebration. The council ordered the supplies it wanted and purchased them at wholesale rates.

Appellant's two employees who accompanied the truck testified that they left the field immediately after the truck had been parked, and that they did not return to the field during the afternoon. One of respondents' witnesses, a member of one of the ball teams, in answer to a question as to whether or not appellant's driver, Gerald Bushey, was at the truck while the ball game was in progress, stated:

"A. As I recall, he was at the truck. Q. Doing what? A. Passing out ice cream, and after the accident had happened they moved the truck in back of the bleachers and Gerald Bushey was selling ice cream behind there. Q. How do you know? A. Because I bought a bottle of pop from him."

No other witness testified to seeing either Bushey or William Charlot, the helper, on the athletic field after the truck was parked. Several witnesses testified that they did not see them.

While the overwhelming weight of the testimony is to the contrary, we will assume that the statements of the one witness referred to would support a finding by the jury to the effect that appellant's employee, Bushey, was, for at least a part of the time, helping dispense ice cream from the truck. As it is not contended that Bushey, the truck driver, had anything to do with the placing of the truck, or that appellant was anywise interested in or concerned with the distribution of the merchandise it had sold to the council,

this matter is of little importance. There can be no question but that appellant Oakley directed that the truck be parked in the position in which it remained up to the time of the injury. Some witnesses testified that, after the boy was hurt, the truck was moved to another position on the grounds; other witnesses stated that the truck was not moved. In any event, the ice cream was thereafter distributed from another place.

Respondents contend that, because the ownership of the truck by appellant was admitted, a presumption arises that Oakley, who was undoubtedly in charge of the truck after it arrived on the grounds, was acting for appellant and as its agent.

■ The general rule is that agency is a matter of proof, and the burden of proving agency rests upon the party who alleges that the agency exists. *Koppler v. Bugge,* 168 Wash. 182, 11 P. (2d) 236.

■ In collision cases, it is generally the rule that the driver of an automobile is presumed to be the agent of the owner; and, if an employee, it will be presumed that he was acting within the scope of his employment. *Moore v. Roddie,* 103 Wash. 386, 174 Pac. 648; *McMullen v. Warren Motor Co.,* 174 Wash. 454, 25 P. (2d) 99. Cases in which this rule has been applied relate generally, if not in all cases, to accidents in which the vehicle itself, while in operation, caused some injury. Our attention has not been called to any case in which the presumption was applied to such a situation as is here presented, where the vehicle was for a long time stationary, and was simply used as a base of supplies.

■ In the case at bar, the use of the truck as a method of transportation for persons or merchandise was entirely completed some time prior to the accident; the truck's journey was ended, its mission accomplished. The truck had not been parked in a posi-

tion which made it a traffic hazard, but at the time it was parked it was placed in a position which could cause danger to no one. The danger did not arise until the ball game commenced.

It is not contended that appellant Oakley was in appellant's employ. Respondents simply argue that, by turning the truck over to Oakley, appellant made him its agent, and thereby became responsible for damages resulting from such an accident as was suffered by Reinhard Lehne.

Apparently, the truck was appellant's ordinary means of delivering goods which it sold. In filling the council's order for ice cream and other supplies, the truck was used to deliver them. Manifestly, it would be convenient for the council if the truck should be left on the ground, to protect the ice cream until it should be dispensed to the individuals who should receive it; and, as we view the transaction, it amounted to no more than a delivery of merchandise to the purchaser, the council, on the athletic field, and the bailment of the truck to the council for the purpose of enabling the latter to more conveniently dispose of the merchandise which it had purchased. It also appears that appellant left the truck on the field for a more convenient return of the containers of the ice cream.

The truck itself inflicted no injury on anyone, nor did its mere presence on the field result in any injury. The accident to the boy occurred because children, including the respondent lad, accepted the invitation extended by the council to approach near the truck in order to receive ice cream, the position which the invitees assumed being at that time dangerous because of the ball game which was going on, and because no steps had been taken to protect the invitees against

the hazard of being struck by a thrown or batted baseball.

We find no support in reason or authority for holding that any presumption of agency arising from the ownership of the truck would extend to all of these different links in the chain of causation which resulted in the injury.

Apparently, respondents rely upon the presumption of agency, no testimony whatever having been introduced, with the possible exception of the one witness referred to, tending to show that any officer, agent, or employee of appellant had any control of, or, indeed, anything to do with, the placing of the truck, or any of the subsequent proceedings. The ice cream and other merchandise were the property of the council. Appellant was not interested in the distribution thereof, whether by gift or sale. In meeting the truck when it approached the athletic field and placing and parking the truck, in inviting children and others to approach and receive or purchase ice cream, and in distributing the ice cream, the council and Oakley, its representative, were acting entirely for themselves, and not on behalf of appellant. The merchandise which had been sold was delivered to the council on the field; and Oakley, on behalf of the council, was bailee of the truck, for the purpose of making the disposal of the merchandise more convenient to the council, which had purchased it.

Respondents, in their brief, clearly state the question to be decided, in the following language:

"Was the evidence, with the presumptions and inferences that may flow therefrom, sufficient in law to allow a jury to determine whether defendant Oakley became the agent of the Ice Company after its regular employees parked its ladened vehicle beside the baseball diamond, to have control over the vehicle or to unload, move and have charge thereof until it was re-

turned. If the jury had this power of determination, the Ice Company is liable with Oakley."

In this connection, respondents argue that appellant would be liable because it knew that commodities delivered in the truck were to be dispensed at the athletic field, and furnished refrigeration for the truck to keep the ice cream cold until used, contending that appellant therefore knew that the truck was to be unloaded piecemeal and participated in such a use of the truck by the council's officers and agents. We think the determinative question is stated in the language above quoted from respondents' brief. We find no basis in the record for broadening the question, as contended for by respondents.

Respondents, of course, contend that, upon the record, the trial court properly held that the question of appellant's responsibility was for the jury to determine, and respondents cite certain texts in support of their contention. The rule is correctly stated in the authorities cited, but the facts disclosed by the record in the case at bar do not bring this case within the principles laid down.

Respondents cite the case of *White v. Stanley,* 169 Wash. 342, 13 P. (2d) 457, in which it was held that the question of the relationship between the parties, whether host or guest or joint adventurers, was for the jury. In the case of *McAllister v. Saginaw Timber Co.,* 171 Wash. 448, 18 P. (2d) 41, it was held that the jury should determine the relationship between a boy who was to deliver some groceries and another boy who had been sent to the store to procure groceries. These cases are not apposite.

It is, of course, true that, if there is any evidence which will support a finding that an alleged principal is liable, or if any reasonable inference of such liability can be drawn from the evidence, a jury question is

presented, but in the record in the case at bar, we find neither.

In connection with respondents' claim that, from the facts, a presumption of agency arose, several of our cases are cited. In all of these cases, a vehicle was being operated, and as the result of such operation a person or property was injured or damaged. In the case at bar, the truck, standing on the athletic field, was no more than a container for the purpose of protecting the ice cream and other merchandise and keeping the same cold until it should be used by the council, which had purchased the same from appellant.

The fact that the president of appellant company knew that a baseball game was to constitute part of the afternoon's exercises, is not important. Respondents frankly admit that appellant sold its merchandise and agreed to deliver the same at the ball park, where the merchandise was delivered in the habitual manner, and that the driver of appellant's truck was instructed to drive the truck to the athletic field and turn it over to appellant Oakley.

Respondents argue that, because some of the merchandise bore appellant's label, and because the truck was marked with appellant's emblem, appellant was somehow concerned with the subsequent disposal of the merchandise, but we find nothing in this argument which is of advantage to respondents.

Appellant Oakley simply contends that, as to him, the case was submitted to the jury under erroneous and prejudicial instructions; and that, as to him, the trial court erred in denying his motion for a new trial. In appellant's brief, the argument that instructions given and excepted to were erroneous is apparently on behalf of both appellants, but as to all but one of the instructions complained of, the argument submitted is manifestly only on behalf of appellant Anacortes Ice

Company. The one instruction which it can be contended affected appellant Oakley was a general instruction on damages.

By this instruction, the jury were told that, if they found for the respondents, they should return separate verdicts upon the two causes of action set forth in respondents' complaint—first, for damages suffered by the respondent minor; and second, to compensate respondent parents for necessary expense in connection with doctor's bills, etc., incurred on account of the child's injuries. In connection with the amount to be awarded the child, in case the jury found in his favor, they were told that they could consider the permanency and disabling effect, if any, of the injuries suffered by the child, and the impairment, if any, of his earning capacity, together with the disfigurement, humiliation, and embarassment, if any, which he had or, with reasonable certainty, would suffer, on account of the injuries. The jury were not instructed that they could return a verdict in favor of the parents for any loss of earning capacity on the part of the child.

The respondent minor was eleven years old at the time of the trial. He would, of course, be entitled to recover, if under the law and evidence he could recover at all, for any impairment of his earning capacity as the same might be affected after he should reach the age of twenty-one years. He might be emancipated from parental control prior to that time, in which event his earnings would be his own. Appellants excepted to the instruction, on the ground that there was no evidence of impairment of the child's earning capacity, or that he would ever be able to earn any money, or if so, how much.

The child suffered a large depressed fracture of the skull, the depressed bone pressing in on the brain over the area which supplies motor impulse to various

muscles and the speech areas. The lad was suffering from convulsions, the brain having been injured. His speech center was impaired. A portion of the skull was removed, and the depressed area raised. It is very possible that the boy will suffer bad effects from the injury in the future; his skull has been permanently weakened.

The jury returned a verdict in favor of the minor in the sum of three thousand dollars. In the light of the permanent injuries to the child, the amount of this verdict was so reasonable that it cannot be contended that in returning the same the jury based the award upon any speculative elements of damage.

■ It does not appear that appellants asked for any substituted instruction; and while, in the particular referred to and other matters, the instruction is subject to criticism, in view of the entire record, the giving of the instruction cannot be held to constitute reversible error.

■ The jury returned a verdict in favor of the parents in the sum of $421.50. Appellants contend that the instruction is too broad, in that it permitted the jury to return a verdict for some items in support of which no evidence was introduced. Considered in the light of the evidence, the instruction would be subject to the criticism mentioned, were it not for the fact that the court limited to the sum of $421.50 the amount which the jury could return on the second cause of action, which amount the jury adopted by its verdict. The record contains evidence which supports a verdict in this amount.

We find no error in the record of which appellant Oakley can complain, and the judgment as to him is affirmed.

We are convinced that on no theory can it be held that the jury's verdict against appellant Anacortes Ice

398

Company finds lawful support in the record. The trial court erred in denying that appellant's motion for judgment in its favor notwithstanding the verdict; and as to that appellant, the judgment appealed from is reversed, with instructions to dismiss the action.

BLAKE, C. J., JEFFERS, and STEINERT, JJ., concur.

