[No. 28427. Department Two. September 15, 1941.]

MRS. K. HANDLEY, *as Guardian of Reinhard Lehne, a Minor, Appellant,* v. RALPH OAKLEY, *Defendant,* GENERAL CASUALTY COMPANY OF AMERICA, *Respondent.*[1]

[1] Reported in 116 P. (2d) 833.

*John W. Brisky* and *Welts & Welts,* for appellant.
*Henderson & McBee,* for respondent.

JEFFERS, J.—This appeal is the aftermath of our decision in *Handley v. Anacortes Ice Co.,* 5 Wn. (2d) 384, 105 P. (2d) 505. In that case, which was an action brought for and on behalf of Reinhard Lehne, a minor, against the ice company and Ralph Oakley, to recover damages for personal injuries suffered by him, and to recover damages for medical and surgical expense incurred by the parents of the minor, the jury returned a verdict in favor of plaintiff and against both defendants. On appeal to this court, the judgment entered on the verdict was affirmed as to Oakley, and reversed as to the ice company, with instructions to dismiss the action as to it.

After the going down of the remittitur, plaintiff caused a writ of garnishment to be served on General Casualty Company of America, which had issued a policy of liability insurance to the ice company, covering the truck involved herein. The garnishee defendant answered, denying liability, which answer was controverted by plaintiff.

It was stipulated and agreed, in the instant case, that the court might consider as true, and as the facts in this case, the facts as set out in the opinion in the *Handley* case, *supra,* plus the testimony of the minor, taken at the former trial. The policy in question here was admitted in evidence, and it was admitted that the policy was at all times in full force and effect, and covered the truck in question. The reservation of rights agreement, under which the casualty com-

pany defended on behalf of Oakley in the *Handley* suit, was also admitted.

After considering all the facts, and after argument of counsel, the court entered an order dismissing the garnishment, and allowing costs to the garnishee defendant. Motions for new trial and for judgment notwithstanding the decision were made and denied, and this appeal by plaintiff followed.

Error is based upon the order dismissing the writ of garnishment, and on the order denying appellant's motion for judgment notwithstanding the decision.

The facts as set out in the *Handley* case, *supra,* and which the trial court in this action was entitled to accept as true, may be stated as follows: The central labor council of Anacortes staged a Labor Day celebration, at an athletic field in Anacortes, on Labor Day, 1937. The festivities commenced early in the afternoon, and concluded with a baseball game. Defendant, Ralph Oakley, was chairman of the council's refreshment committee, and ordered from the ice company ice cream in bulk, ice cream bars, and some soft drinks. Prior to Labor Day, a representative of the council had arranged with the president of the ice company for the purchase of the ice cream and soft drinks, and for the use of the truck as a storage depot during the celebration.

The truck containing the supplies arrived at the field about one o'clock, and was met by Mr. Oakley, who stepped on the running board and indicated to the driver where the truck should be parked, which was at a spot about twenty-five feet from the baseball diamond, and a little over halfway between home plate and third base. A small railing was put in position beside the truck, to keep the children in single file while approaching to receive their ice cream.

Oakley was in charge of the distribution of the ice cream, assisted by other members of the council.

The first quantity of ice cream was soon exhausted, and a further supply was ordered, which was delivered by the ice company to some members of the council at the entrance to the athletic field, and by them carried by hand to the place where the truck was parked. Apparently it was during the dispensing of this second lot of ice cream that the minor, Reinhard Lehne, was injured. At the conclusion of the first portion of the program, it was requested over the loud speaker that the field be cleared, and shortly thereafter the ball game commenced. During the fourth inning, the minor was standing near the truck, when a batter struck a foul ball which hit the boy on the head, seriously injuring him.

In spite of the stipulation in regard to the facts, appellant, on page three of her brief, states:

"As he (referring to the minor) reached up to receive it (referring to the ice cream), he was struck on the left side of the head with a sharply-hit foul ball."

Respondent takes exception to the above statement, contending that the testimony does not show that, at the time the minor was struck, he was actually being handed some ice cream by someone on the truck. The testimony of the minor was as follows:

"Q. Where were you when you got hurt? A. I was standing by the truck. Q. What was being given away or dispensed out of the truck? A. Ice cream. Q. When you were hit with a baseball what were you doing at the truck? A. I was getting my ice cream."

While we doubt that the testimony of the minor can technically be construed as contended for by appellant, we are of the opinion it would make no difference in this case whether the minor was actually

reaching up to receive the ice cream at the time he was struck, or merely standing there waiting to receive his ice cream.

It is admitted by respondent that the provisions of the policy set out in appellant's brief are correct, and are the material provisions. They are as follows:

"General Casualty Company of America and General Insurance Company of America . . . do hereby . . . agree with the insured named in the declarations made a part hereof, in consideration of the payment of the premiums . . .

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury . . . sustained by any person or persons, caused by accident and arising out of the ownership, maintenance or use of the automobile . . .

"The unqualified word 'insured' wherever used in coverages A and B [coverage A being bodily injury coverage] and in other parts of this policy when applicable to these coverages, includes not only the named insured but also any person while using the automobile and any person or organization legally responsible for the use thereof, provided the disclosed and actual use of the automobile is 'pleasure and business' or 'commercial' each as defined herein, and provided, further, that the actual use is with the permission of the named insured, who, if an individual, may give such permission through an adult member of his household other than a chauffeur or domestic servant."

"Item 6. The purposes for which the automobile is to be used are Commercial Purposes—Business & Pleasure.

"(a) The term 'pleasure and business' is defined as pleasure, personal use and family use, including business purposes. (b) The term 'commercial' is defined as the transportation or delivery of goods or merchandise and other business uses in connection with the insured's business occupation as expressed in Item 1,

including occasional pleasure use for the named insured and family. (c) Use of the automobile for the purposes stated includes the loading and unloading thereof."

It is contended by appellant that Oakley, having been given permission to use the truck, is an additional insured under the policy; that injury was caused by an accident arising out of Oakley's maintenance or use of the truck, in his or his organization's business or pleasure; and that the insurance company is obligated to pay the judgment.

We do not understand that respondent contends it would not be liable if Oakley is an insured under the terms of the policy, and if the accident happened as the result of the maintenance, operation, or use of the truck; but it is contended by respondent that Oakley is not an additional insured under the policy, and that it never was the intention of respondent or the ice company, the named insured, that the policy should insure against the liability of a gratuitous bailee for that bailee's invitees. In other words, it is respondent's contention that the wording of the policy does not contemplate a situation where the direct cause of the accident is a source independent of the truck, nor was it the intention of the parties, in the use of the phrase "arising out of the ownership, maintenance, or use of the automobile," to cover such a situation.

█ We agree with respondent that, this being a policy of automobile insurance, the primary object of the policy is to indemnify the policyholder for injury for which it might be liable on account of the ownership, maintenance, or use of the truck.

It is also possible, and probable, that the additional protection afforded by the policy was made necessary because of the rules of evidence relative to the so-called *prima facie* cases, illustrated by the case of

*Steiner v. Royal Blue Cab Co.,* 172 Wash. 396, 20 P. (2d) 39. It is also probably true that the additional coverage as to loading and unloading was made necessary by the hazard of injury to third persons by the actual unloading of a truck, transporting, or delivering goods in connection with an insured's business.

Under the terms of the policy, the injury sustained must be caused "by accident and arising out of the ownership, maintenance, or use of the automobile," and the word "use" is made to include loading and unloading.

Let us now determine the cause of this accident, and see whether or not it can be said that the maintenance, use, or operation of the truck was, under a fair and reasonable construction of the terms of the policy, the cause of the accident.

Appellant contends the boy was injured through accident arising out of the use or maintenance of the truck by Oakley; that the use made of the vehicle was to unload, by dispensing piecemeal, the commodities therein; that the act of unloading was designed to bring the child there to receive the commodity handed therefrom; and that he was injured because he was brought there to receive the ice cream; further contending that had the truck not been so used, the child would not have been hurt.

Intriguing as the above contention may be, we are unable to follow appellant in her contention,. and we are inclined to agree with respondent that the primary cause of the accident was the ball game. Secondarily, the accident happened because the boy was, at the time of the accident, standing in a dangerous place. He was at this place, pursuant to the invitation of Oakley, to have some ice cream, which Oakley, as the agent of the council, was distributing. The truck, at most, was being used only for the purpose of storing

the ice cream. As stated by the trial court, the truck was but a place, and not the instrument. The accident would have happened had the ice cream been stored in or dispensed from any sort of a vehicle or place.

While we appreciate that, under the stipulation, the trial court in the instant case was bound to accept as true only the facts as disclosed by the opinion in the *Handley* case, *supra,* and not the conclusions of this court, still the trial court undoubtedly could and did conclude, as did this court in the *Handley* case, that

"The truck itself inflicted no injury on anyone, nor did its mere presence on the field result in any injury. The accident to the boy occurred because children, including the respondent lad, accepted the invitation extended by the council to approach near the truck in order to receive ice cream, the position which the invitees assumed being at that time dangerous because of the ball game which was going on, and because no steps had been taken to protect the invitees against the hazard of being struck by a thrown or batted baseball."

The statement of facts in this case consists very largely of argument of counsel on their theories of the case and statements made by the court, and it is apparent from a reading of this statement that the trial court was at all times doubtful of appellant's contentions. The trial court's concluding statement, with which we agree, is as follows:

"I think it would be stretching the contract far beyond the contemplation of the parties if they were to be held for liability arising out of a state of facts which showed no causal connection at all between the automobile insured and the accident."

A case cited by respondent, which we think most in point on what should be the proper construction to be placed on the provisions in the policy herein, relative to the use, maintenance, and operation of the

truck, is *Zurich General Accident and Liability Ins. Co. v. American Mutual Liability Ins. Co.*, 118 N. J. L. 317, 192 Atl. 387. The policy in the cited case contained a provision to all intents and purposes like the one in the instant case. In that case, the driver of a truck covered by the policy had delivered a can of milk to one Borer, the party injured, and while the driver was putting the milk in Borer's ice box, Borer came in contact with an ice pick carried in the back pocket of the driver, and received the injury complained of, and which it was claimed was covered by the policy of insurance on the truck. Certain phraseology in the cited case, which we shall quote, is particularly applicable to the instant case:

"The contracting parties plainly contemplated an accident immediately identified with the ownership, maintenance, use, or operation of the vehicle; and the mishap which befell Borer does not fall into that category. . . .

"These words are plain and unambiguous, and delimit with understandable certainty the liability imposed upon the insurer. They relate to the vehicle itself, and exclude acts that are only remotely connected with its ownership, maintenance, use, or operation. A construction that would include within the coverage of a clause so phrased the thing being done when this accident happened would impart to it an artificial meaning at variance with the apparent intention of the parties."

And so in the instant case, to hold that, under the provisions of the terms of this policy, Oakley was an additional insured, and that the use he was making of this truck was the cause of the accident, would be putting a strained and artificial construction upon the provisions of the policy, and one never contemplated by the parties.

The phrase "arising out of" has been construed by this court with respect to its use in the workmen's

compensation act. In *MacKay v. Department of Labor & Industries,* 181 Wash. 702, 44 P. (2d) 793, in construing this phrase we quoted from *In re McNicol,* 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306, as follows:

" 'It [an injury] "arises out of" the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment.' "

■ We are also satisfied that it cannot be successfully claimed that the acts of Oakley come within the provisions of the policy relative to "unloading." In the instant case, the ice cream had been delivered to the council, and the use of the truck in connection with the transportation and delivery of the commodities therein had been completed. Clearly, in our opinion, the use of this truck to store the ice cream and the handing out of the ice cream cannot be considered as "unloading," as that word is used in the policy.

This boy was not injured by any direct act of anyone on the truck, or as the direct result of removing anything from the truck, such as a container, etc. The truck was just the place from which the ice cream was dispensed.

Appellant cites *State ex rel. Butte Brewing Co. v. District Court,* 110 Mont. 250, 100 P. (2d) 932. In the cited case, the policy covered injury sustained in loading and unloading. The court held the unloading of the truck was a continuous operation from the time the truck came to a stop until the barrel of beer

was delivered to the consumer. The unloading of the truck cannot be said to have been accomplished when the barrel of beer was placed on the sidewalk. The unloading thereof embraced the continuous action of placing the commodities where they were intended to be actually delivered by use of the truck.

The above case is not applicable here, as it is apparent that the theory upon which the decision was based is that there had been no completed delivery to the person to whom the commodity on the truck was to be delivered, and that, until that occurred, the insurance company was liable for injury occasioned by the unloading. In the instant case, the use of the truck as a means of transportation had been completed prior to the accident, and the commodities therein contained had been delivered to Oakley, for the council.

The theory of the last cited case, and others therein referred to and relied upon, is that the use of the truck was the primary and efficient cause of the injury, in that the unloading was one of the natural and necessary steps to the undertaking to deliver whatever was contained in the truck. The theory last above announced is the basis for the decision in *Panhandle Steel Products Co. v. Fidelity Union Casualty Co.*, 23 S. W. (2d) (Tex. Civ. App.) 799, cited by appellant, and one of the cases relied upon in the *Butte Brewing Co.* case, *supra*.

Appellant also cites *Quality Dairy Co. v. Ft. Dearborn Casualty Underwriters*, 16 S. W. (2d) (Mo. App.) 613, wherein it appears that a motor truck was used in hauling a wagon, which became detached from it, and collided with an automobile, injuring one therein. The question presented was whether the accident arose out of the use of the truck. The court, holding that it did, stated:

"We cannot escape the view that, however the wagon may have become detached, it was nevertheless

the use or employment of the truck as a propelling power which put the wagon in motion and started the chain of circumstances which proximately led to the injury sustained."

We do not care to refer to the case of *Park Saddle Horse Co. v. Royal Indemnity Co.*, 81 Mont. 99, 261 Pac. 880, cited by appellant, other than to say that we are unable to agree with the reason assigned for the decision.

The case of *Wheeler v. London Guarantee etc. Co.*, 292 Pa. 156, 140 Atl. 855, cited by appellant, is based upon the theory heretofore announced as supporting this class of cases. The policy in the cited case provided for indemnity for injuries sustained while loading or unloading, and that the commercial cars "will be used for transportation of materials and/or merchandise incidental to the business" of the insured. The court held the truck was being used in the operation for the reason that, after the planks and rollers had been placed under the girder (it was while this was being done that the boy was injured), the truck furnished the motor power to slide or roll the beam into the garage. The court reasoned that the truck was an indispensable agency in the work then being carried on.

The case of *Stammer v. Kitzmiller*, 226 Wis. 348, 276 N. W. 629, is cited by counsel for both parties hereto. We are of the opinion it more nearly supports the contention of respondent than that of appellant.

The case last above cited is referred to in the *Butte Brewing Co.* case, hereinbefore mentioned, and while such reference admits the *Stammer* case supports a contrary doctrine, it is stated that the facts in the *Stammer* case differ in some respects from those in the *Butte Brewing Co.* case. Of course, no two cases ever have exactly the same facts, but it is difficult for us to see wherein the facts of the two

cases are so different as to make the principle announced in the *Stammer* case inapplicable. We are inclined to the view that the court in the *Butte Brewing Co.* case did not care to follow the line of cases based on the principle announced in the *Stammer* case.

We deem it unnecessary to refer to the other cases cited by appellant, as they fall generally within the class of cases referred to herein, and upon which appellant relies. We are of the opinion the cited cases are not controlling herein.

Appellant finally contends that a policy of insurance must be strictly construed against the insurance company, and liberally in favor of one to be afforded protection by it. In discussing this rule in *Green v. National Casualty Co.*, 87 Wash. 237, 151 Pac. 509, we stated:

"In thus construing the policy, we are not unmindful of the rule that policies of insurance are construed in favor of the insured and most strongly against the insurance companies. *Starr v. Aetna Life Ins. Co.*, 41 Wash. 199, 82 Pac. 113, 4 L. R. A. (N. S.) 636. But this rule should not be permitted to have the effect to make a plain agreement ambiguous and then interpret it in favor of the insured. Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain and ordinary meaning."

In the instant case, we do not find the provisions of the policy ambiguous or difficult of comprehension, and therefore there is no necessity for the application of the rule.

In conclusion, we are of the opinion the accident here involved did not occur out of the ownership, maintenance, or use of the truck, as those words are used in the policy here in question, and that Oakley was not therefore an additional insured under the

policy. It follows that respondent is not obligated to pay the judgment against Oakley, and that the trial court properly dismissed the writ of garnishment and refused to grant appellant's motion for judgment notwithstanding the decision of the trial court.

The orders appealed from are affirmed.

ROBINSON, C. J., BEALS, MILLARD, and SIMPSON, JJ., concur.

[1]Reported in 116 P. (2d) 840.