90 So.2d 417 (1956)
George SPURLOCK, Plaintiff-Appellee,
v.
BOYCE-HARVEY MACHINERY, Inc. and The Travelers Insurance Company, Defendants-Appellants,
American Mutual Liability Insurance Company, Intervenor-Appellee.
No. 4243.
Court of Appeal of Louisiana, First Circuit.
October 6, 1956.
Rehearing Denied November 26, 1956.
*419 Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for appellants.
Dodd Hirsch & Barker, Baton Rouge, for plaintiff.
Breazeale, Sachse & Wilson, Baton Rouge, for intervenor.
TATE, Judge.
This case primarily concerns interpretation of the "loading and unloading" clause of an automobile liability insurance policy and determination as to whichif either of two insurers is the primary insurer of the loss herein.
Plaintiff Spurlock, a truck driver for Garig Transfer, Inc., was hurt while picking up a shipment for his truck at the Boyce-Harvey Machinery, Inc., shipping dock. He filed suit for his personal injuries against Boyce-Harvey and its general liability insurer, The Travelers Insurance Company. Garig's compensation insurer, the American Mutual Liability Insurance Company, intervened as workmen's compensation subrogee for compensation and medical expenses it had paid to or for Spurlock as a result of the injury.
By third party petition, call in warranty, and reconventional demand the Travelers Insurance Company ("Travelers") seeks to hold the American Mutual Liability Insurance Company ("American Mutual") primarily liable for all tort damages sustained by Spurlock in the accident, based upon the "loading and unloading" clause of the automobile liability policy issued by American Mutual to the Garig Transfer, Inc., plaintiff's employer, covering the operation of the truck owned by Garig which plaintiff was loading at the time of the accident.
Boyce-Harvey and Travelers appeal from judgment against them in the total amount of $6,558.72, which judgment also dismissed their reconventional demand, third party complaint, and call in warranty against American Mutual.
1. Facts and Factual Issues
On September 26, 1952, plaintiff Spurlock as truckdriver for Garig drove to the Boyce-Harvey premises in Baton Rouge to pick up a shipment of 50 grader blades for delivery to various consignees. Prior to Spurlock's arrival, these grader blades had been brought by a Boyce-Harvey employee (Ben Dunn) to the loading platform.
Each steel grader blade was 6 feet long, 6 inches wide, 1 inch thick, and weighed 53 pounds. These blades were stacked in two bundles, resting on 2" × 4" boards; each bundle containing 25 blades divided into two stacks and tightly bound at both ends with wire. The bundles were approximately 13 inches high and were placed with the ends close to the edge of the loading platform, to which plaintiff's truck backed so that the floor of the truck body was flush level with the said loading dock.
On Spurlock's arrival, Bennie Jones, a Boyce-Harvey employee, came to the dock with the bill of lading and with a hammer and address tags. In the presence of Spurlock, Bennie Jones cut the wire bindings on both ends of one bundle by striking with the hammer the taut binding wire against the sharp edge of one of the bound blades. Jones then began to place the address tags on the individual blades by pulling the top blade forward from the stack toward the *420 truck a few inches and then attaching the tag through a hole in the front end of the blade. Spurlock stood in or near the back of the truck and shoved or pulled each blade, after Jones tagged it, into the body of the vehicle.
When the first bundle had been entirely loaded, Bennie Jones turned to the second bundle and cut the wire binding on the end adjacent to the truck. As he was cutting the second binding at the rear of the bundle, Spurlock stepped from the truck, and his foot was struck and fractured by the fall of three of these heavy blades off the stack previously held by the taut binding. The blades immediately fell when Bennie struck and cut the second set of wire bindings, apparently releasing the blades.
We think the District Court correctly held that the doctrine of res ipsa loquitur applied under the circumstances of this case. "It is well established in the Louisiana jurisprudence that the doctrine of res ipsa loquitur must be applied to a case if the accident which damaged plaintiff was caused by an agency or instrumentality within the actual or constructive control of the defendant, if the accident is of a kind which ordinarily does not occur in the absence of negligence, and if the evidence as to the true explanation of the accident is more readily accessible to the defendant than to the plaintiff." Northwestern Mutual Fire Ass'n v. Allain, 226 La. 788, 77 So.2d 395, at page 397 and cases cited therein. See also Saunders v. Walker, 229 La. 426, 86 So.2d 89; Bush v. Bookter, La.App. 1 Cir., 47 So.2d 77, Malone, "Res Ipsa Loquitur", 4 La.L.Rev. 70.
We agree with the District Court's conclusions:
"From the testimony there is no room here for any presumption other than that defendant, Boyce-Harvey Machinery, Inc. and its employees were guilty of negligence either in the manner in which the bundles were stacked on the timbers or in the manner in which Jones struck the wires on the last bundle with his hammer or by the failure to check the bundles to prevent the stacks from rolling when the stacks were freed from each other's support or by some other acts or ommission or commission which said defendants because of their superior knowledge should know about. * * *
"Bennie Jones made no attempt to explain the reason why the stack of blades fell over, except to say that the blades fell on plaintiff's foot and that `the wires might have been tight'. There is a presumption of negligence by convincing evidence. * * *
"Dunn is still in the employ of said defendant. He should have been in position to know something about the manner in which these bundles were stacked on the dunnage boards. Because of the failure to call him as a witness for the defendants we must assume that his testimony would have been unfavorable.
"In the absence of positive showing of freedom from fault the conclusion is inescapable that the defendant, Boyce-Harvey Machinery, Inc., through its employees, was guilty of negligence the consequences of which was the injury to plaintiff's foot for which he here seeks damages."
Cases which similarly hold liable the owner or custodian of goods or equipment which fell so as to injure persons on the premises include: Washington v. T. Smith & Son, La.App., 68 So.2d 337, certiorari denied; Patrick v. T. Smith & Son, La. App., 56 So.2d 190; Mercer v. Tremont & Gulf Ry. Co., La.App., 19 So.2d 270, certiorari denied; Gremillion v. American Creosote Works, Inc., La.App., 14 So.2d 72.
Further, as the Mercer case holds, the business guest or invitee is owed the duty by the owner of the property of *421 reasonable care with respect to the condition of the premises. And, as the Patrick and Gremillion cases hold, such business invitee is not contributorily negligent or does not assume the risk so as to bar his recovery by his failure to anticipate the hazard caused by the condition of the premises or the negligent manner of the handling of the goods which fall, when the hazard is not obvious.
The District Court correctly held that there was nothing to the outward eye to suggest a possibility of danger in the manner in which the blades of the second bundle was stacked; and as a matter of fact, this is the first time that such blades had ever so fallen in the extended experience of both Spurlock and Jones.
Cases such as Fradger v. Shaffer-Stein Corp., La.App., 73 So.2d 612, relied upon by defendant-appellants in support of their contention that recovery should be denied plaintiff-appellee because of his contributory negligence or assumption of the risk, are factually distinguished from the present, since they concerned situations of known and obvious dangers or dangers which should have been observed in the exercise of reasonable care.
As to damages: The special damages are proven. And we do not feel the award of $5,000 to plaintiff to be manifestly either insufficient or excessive for personal injuries, which consisted of the fracture of the two main weight bearing bones of his right foot, severe pain at the time of the accident, present discomfort and residual pain and disability from time to time and a permanent disability of 10 to 15%, especially causing discomfort and pain on weight bearing necessary in plaintiff's occupation. Plaintiff was also in a cast for approximately 2 months suffering some pain and discomfort during this time. See Eleazar v. Illinois Central Railroad Co., La.App., 24 So.2d 387.
2. Liability of American Mutual under its "loading and unloading" clause.
As of the time of judgment, the District Court correctly dismissed appellant's claim in reconvention and warranty that American Mutual was primarily (or at least also) liable for the personal injury sustained by plaintiff Spurlock on the ground that Jones (although Boyce-Harvey's employee) and/or his employer Boyce-Harvey was an omnibus insured (in the same manner as was plaintiff Spurlock himself) under the automobile liability policy issued by American Mutual to Garig and covering operation of the truck belonging to Garig and used by Spurlock in the course of his employment with said firm. American Mutual's automobile liability policy included a "loading and unloading" clause, as a result of which the coverage included those injured by the negligent acts of those authorizedly loading and unloading said truck.
For at the time this case was decided by the able District Court, even were Jones held to be such an omnibus assured under the clause in question, nevertheless under the exclusion clauses preventing recovery of tort damages by any employee of the "insured",[1] the law of Louisiana was to the effect that Spurlock, as an employee of Garig, the named insured, could not recover damages from the insurer for personal injuries sustained through use (including loading and unloading) of the truck in question. Pullen v. Employers' Liability Assur. Corp., Ltd., La.App., 72 So.2d 353.
*422 However, very recently after the District Court had rendered its decision herein, our Supreme Court has interpreted the clauses in question so as not to bar recovery by an employee of the named insured, when the cause of action is based upon the negligence of the omnibus insured, if there is no employer-employee relationship between the injured person and the omnibus insured. Pullen v. Employers' Liability Assur. Corp., Ltd., 230 La. 867, 89 So.2d 373.
Since there is no employer-employee relationship between Bennie Jones or Boyce-Harvey on the one hand and George Spurlock on the other hand, under the Supreme Court decision in the Pullen case the employee exclusions in the American Mutual policy are not applicable herein; and this Court is squarely faced with the necessity of determining whether Bennie Jones and/or Boyce-Harvey are omnibus insured under the "loading and unloading" clause of the American Mutual policy.
The American Mutual policy covers liability to pay on behalf of the named or omnibus insured damages "caused by accident and arising out of the ownership, maintenance or use of the automobile in question". Insuring Agreement number 8 of the policy (i. e., the "loading and unloading" clause) provides that: "The use of the automobile for the purposes stated includes the loading and unloading thereof."
The central question, then, is whether at the time of the accident Bennie Jones was engaged in "loading" the insured truck. If so, under the italicized clause, Jones was an omnibus insured whose negligent acts causing injury to others while "loading" said truck were covered by the American Mutual policy.
While the District Court briefly commented that the evidence did not show that Bennie Jones rendered any assistance in the loading (placing) of the blades on the Garig truck, determination of whether his activities constituted "loading" within the meaning of the policy coverage is a question of law, which the District Court correctly did not attempt to discuss or to resolve since at the time of the decision below, Spurlock's recovery from American Mutual was excluded as an employee of the named assured (Garig) under the subsequently overruled Pullen case, 72 So.2d 353.
Although this is apparently a cause of first impression in Louisiana concerning the interpretation of this clause, the occasion for construing it has arisen often in the courts of other states. Extensive citation and discussion of cases and principles relating to interpretation of this clause are found in Pacific Automobile Ins. Co. v. Commercial Casualty Ins. Co., 108 Utah 500, 161 P.2d 423, 160 A.L.R. 1251; Annotation, "Risks within loading the unloading clause of automobile insurance policy", 160 A.L.R. 1259; 7 Appleman's Insurance Law & Practice 92, Section 4322.
"Practically all authorities are agreed that in such insurance contracts the phrase `including loading and unloading' is a phrase of extension. It expands the expression `the use of the truck' somewhat beyond its connotation otherwise so as to bring within the policy some acts in which the truck does not itself play any part. It deals with a period when the truck itself is at rest, but the goods are being moved onto or off the truck". Pacific Automobile Ins. Co. v. Commercial Casualty Insurance Co., 180 Utah 500, 161 P.2d 423, 424, 160 A.L.R. 1251, at page 1253.
In the comprehensive discussion of the annotation at 160 A.L.R. 1259, the following summary is contained at pages 1260-1261:
"As a conclusion from all the cases, the following general rules governing the construction and application of the `loading and unloading' clause may be stated:

*423 "1. The general rules of construction pertaining to the construction and interpretation of insurance contracts in general have full application in the case of the `loading and unloading' clause. Among those rules are the principles that the intention of the parties is the controlling factor, that the terms `loading' and `unloading' are to be taken in their plain and ordinary sense, and that the policy of insurance is to be construed as a whole.
"2. The `loading and unloading' clause is a phrase of extension, expanding the term `the use of the automobile'.
"3. An accident, in order to be covered by the `loading and unloading' clause, must
"(a) have occurred during what the particular court considers as the process of loading or unloading and
"(b) be causally connected with the act of loading or unloading the automobile.
"4. There is a conflict of authority in regard to the scope of loading and unloading operations, the courts adhering either to the `coming to rest' doctrine or to the `complete operation' doctrine.
"5. An accident is causally connected with the process of loading or unloading within the meaning of the clause if the loading or unloading was its efficient and predominating cause."
This annotation summarizes the theories "coming to rest" versus "complete operation"under which liability has been imposed upon the insurers under the "loadand unloading" clause as follows, 160 A.L.R. 1264, and 1267-1278:
"`Coming to rest' doctrine

"The theory under which the scope of an automobile liability insurance policy is least broadened by the addition of the `loading and unloading' clause is the so-called `coming to rest' doctrine. According to this doctrine unloading within the meaning of the `unloading' clause comprises only the actual removing or lifting of the article from the motor vehicle up to the moment where (a) the goods which were taken off the automobile have actually come to rest and (b) every connection of the motor vehicle with the process of unloading has ceased. * * *
"The rule probably can be stated that under this view, the term `loading' covers the period of time and events beginning when the articles are started in movement which movement is not interrupted or broken by rest or pauses, until the articles are placed in or on the motor vehicle.
"It should be noted that even under this theory loading and unloading are held to include more than the mere acts of placing the goods on the automobile or of removing them therefrom. No case has been found that would give the clause such narrow construction." * * *
"`Complete operation' doctrine.

"Giving the `loading and unloading' clause a somewhat broader construction than it has under the `coming to rest' doctrine, some courts take the view that such clause covered the entire process involved in the movement of goods from the moment when they are given into insured's possession until they are turned over at the place of destination to the party to whom delivery is to be made. This theory, which may appropriately be called the `complete operation' doctrine, omits, for all practical purposes, any distinction between `unloading' and `delivery', and between `loading' and `preparatory actions'."
*424 Cases cited by appellant-Travelers in support of its contention that under the "complete operation" doctrine the liability to plaintiff Spurlock was covered by the "loading and unloading" clause of the American Mutual Automobile Liability policy include: Pacific Automobile Ins. Co. v. Commercial Casualty Ins. Co., 108 Utah 500, 161 P.2d 423, 160 A.L.R. 1251; Wagman v. American Fidelity & Casualty Co., Inc., 304 N.Y. 490, 109 N.E.2d 592; Raffel v. Travelers Indemnity Co., 141 Conn. 389, 106 A.2d 716; Connecticut Indemnity Company v. Lee, 1 Cir., 168 F.2d 420; Lowry v. R. H. Macy & Co., Sup., 119 N.Y.S.2d 5.
The negligent action in the first cited case was the removal by the employees of the named insured of a manhole cover on the premises of the consignee for purposes of unloading and delivering the beer delivered by said employees. A blind man fell into the open manhole, and it was held that his injuries were covered by the "loading and unloading" clause of the named insureds automobile policy.
The Wagman case held that the truck insurer was liable under the clause in question for the negligence of an employee of the consignor (as in the present case) who was supervising the employees of the truck owner (who was the named insured) in their loading of clothing picked up at the store.
The Raffel case held the automobile liability insurer liable for injuries sustained by the consignee's daughter, when a roll of the linoleum which had been delivered several hours earlier and negligently placed against the consignee's house fell and injured said child.
The Connecticut Indemnity case held liable the insurer under the "loading and unloading" clause for an injury sustained by a pedestrian who fell into an elevator shaft on the premises of the consignee, which elevator shaft had been opened by the named insured's truck driver immediately prior to the accident but before the truck driver had actually taken any steps to unload the vehicle.
The Lowry case likewise held liable the truck owner's automobile liability insurer for injuries caused by the fall of some filing cabinets delivered by the insured truck and loaded by the consignee's employee onto a dolly, which filing cabinets fell therefrom while in transit in the building to their ultimate destination therein.
In the very recent case of Bituminous Casualty Corporation v. Travelers Insurance Company, D.C., 122 F.Supp. 197, the personal injuries of the truck driver, who was the named insured, were held covered under the "loading and unloading" clause of his own policy. They were caused by the negligence of the consignor's powershovel operator, who struck the truck's owner-driver with his power-shovel which was about to load some lime into the truck for consignment; the consignor's employee (the power-shovel operator) was held to be an omnibus assured under the policy, as engaged in loading the insured truck.
American Mutual cites in support of its contention that the "loading and unloading" clause does not apply to the present situation, the following cases based on the "coming to rest" doctrine: Zurich General Accident & Liability Insurance Company, Ltd. v. American Mutual Liability Insurance Company, 118 N.J.L. 317, 192 A. 387; St. Paul Mercury Indemnity Company v. Standard Accident Insurance Company, 216 Minn. 103, 11 N.W.2d 794; Ferry v. Protective Indemnity Company, 155 Pa.Super. 266, 38 A.2d 493; American Casualty Co. v. Fisher, 195 Ga. 136, 23 S.E.2d 395, 144 A.L.R. 533; Maryland Casualty Company v. United Corp., D.C., 35 F.Supp. 570; Handley v. Oakley, 10 Wash.2d 396, 116 P.2d 833.
These cases involve situations similar to the above, but with legal results directly contrary. In general, they rest upon the *425 proposition that once the goods delivered came to rest initially, then their further movement by employees either of the shipper or the consignee was not within the scope of the coverage of the "loading and unloading" clause.
In the Ferry case, for instance, the truck driver was moving some ashes from a cellar to his truck, and upon carrying the container of ashes to the cellar door, caused injuries to a pedestrian by opening the door. The court here held that there is no causal connection between the driving of the truck and the opening of the cellar door.
There is much logic in both these contrary doctrines.
However, we believe it can safely be said that a majority of the jurisdictions, and a majority of the more recent cases, follow the more liberal doctrine that the "loading and unloading" clause is to be interpreted to cover all the steps that can be regarded as an integral, continuous part of the complete operation of transferring the goods into or out of the insured motor vehicle. Of course, all cases agree that where the loading and unloading begins or ends must by necessity vary greatly with the facts of each case.
In the case before us, the evidence is uncontradicted that on all occasions prior to the one in which the accident herein occurred, the grader blades had been stacked and separately tagged by Boyce-Harvey employees prior to the appearance of the Garig transfer truck on the scene. It appears that on all these prior occasions less than a full bundle of grader blades had been consigned.
Relying upon this, counsel for American Mutual very ably argues that "the tagging of the blades and the loading of the blades were two separate and distinct operations as to which Boyce-Harvey had the responsibility for tagging the blades and Garig the responsibility for loading the blades". Counsel then argues that the slight movement of the blades by Jones in order to place destination tags on each of them was in no way related to the loading of the truck, and therefore cannot be considered a "use" of the Garig truck so as to cause him to become an omnibus assured under American Mutual's automobile policy.
American Mutual counsel further argues that until the blades were tagged, they were still in the possession of Boyce-Harvey, and could not be in the process of being loaded by Garig until their possession was delivered to Garig after tagging; that the blades in question which fell and injured Spurlock, had not been tagged, and therefore could not be in the process of being loaded because possession had not yet been delivered.
We do not concur in these able arguments. Although usually the tagging of the blades and the loading thereof may have been two separate and distinct operations, in this particular instance the tagging was an integral part of the continuous process of loading the grader blades directly from the Boyce-Harvey premises onto the truck.[2]
*426 The term "loading" used in the policy clause, in context with its other provisions, is to be interpreted as involving something additional to mere use of the truck, and, according to the uniform Louisiana jurisprudence, must be liberally construed in favor of the insured, e. g., Pullen v. Employers' Liability Assur. Corp., Ltd., 230 La. 867, 89 So.2d 373.
As was stated in Wagman v. American Fidelity & Casualty Co., Inc., 304 N.Y. 490, 109 N.E.2d 592, 594, similarly construing the clause to cover activities of the consignor's employee as part of the loading process:
"Since, then, the policy is to be interpreted as covering the complete operation of making a pickup, the processperformed by Gilbert's [Garig's] employeesof placing the goods on the vehicle cannot be dissociated from the processperformed by Bond's [Boyce-Harvey's] employeesof taking the goods from the store to the curb line. Both operations together constituted the act of `loading' the vehicle." (Italics ours.)
The argument that possession of the particular blades which injured Spurlock had not been delivered to Garig because they were not tagged, and therefore that said blades were not yet being loaded, overlooks our interpretation that the clause in question covered the entire process of loading, not simply the physical handling of each individual grader blade after it was tagged and during the second or so it was being transferred from the top of the stack to the bed of the truck. The "loading" covered by the insuring clause in question was not limited simply to this physical transfer from the hand of the consignor to that of the shipper, but it included the entire process during which the goods were being transferred from the consignor to and into the insured truck for shipment or transit.
Whether the actions preparatory to loading the goods are so directly related to use of the truck in question as to be within the coverage of the "loading and unloading" clause is a matter which must vary greatly with the facts of each casebut here, with the truck present at the premises and some of the goods already loaded and in the midst of loading the remainder, and when the injury was sustained as a direct result of an activity directly related to such loading, we think coverage must unquestionably be sustained.
Therefore, we find that Bennie Jones, as employee of Boyce-Harvey, was "loading" the truck insured by American Mutual so as to be an omnibus insured thereof, and so as to render American Mutual liable for injuries sustained by Spurlock through negligence of Bennie Jones[3] while Bennie Jones was engaged in loading the truck in question.
3. Is the American Mutual solely liable as primary insurer for the damages caused by this accident?
Both the American Mutual and the Travelers policies contain "other insurance" clauses providing, in the event of co-insurance for pro rating a loss between the coinsurers in proportion to the applicable limits of liability of the respective policies.
American Mutual's contract covered liability for personal injuries up to $50,000 for each person injured (not to *427 exceed $200,000 per accident); Travelers' covered liability up to $100,000 per person (not to exceed $1,000,000 per accident). Since the recovery we have affirmed is well within the limit of either policy, the effect under those "other insurance" clauses of holding American Mutual liable as a co-insurer of the loss is to hold both insurers liable in proportion to the amount of insurance provided by their respective policiesi. e., American Mutual liable for 50,000/150,000 (or 1/3) and Travelers liable for 100,000/150,000 (or 2/3) of the loss. See Guin v. Commercial Casualty Ins. Co., 224 La. 44, 68 So.2d 752; Annotation, "Apportionment of losses among automobile liability insurers under policies containing pro rata clauses," 21 A.L.R.2d 611.
However, counsel for Travelers point out that their general liability policy provided insurance only for Boyce-Harvey and "any executive officer, director, or stockholder" thereof acting within the scope of their official dutiesand not to an employee (such as Bennie Jones);[4] whereas on the other hand, under the American Mutual policy coverage was extended to Jones personally as an omnibus insured so long as he was using (loading) the insured truck.
Under the doctrine of respondeat superior Boyce-Harvey (and therefore Travelers under its policy insuring Boyce-Harvey against such liability) is liable to third parties for the negligence of its employees (such as Jones) while acting in the scope and course of employment. But such liability is vicarious only and does not constitute Boyce-Harvey a joint-tort-feasor or render it solidarily liable with its negligent employee, Cox v. Shreveport Packing Co., 213 La. 53, 34 So.2d 373. Ordinarily, in fact, an employer may recover from his employee the damages the latter's negligent conduct has caused the employer to pay a third party, Costa v. Yoachim, 104 La. 170, 28 So. 992; Brannan, Patterson & Holliday v. Hoel, 15 La.Ann. 308; see also, Hardtner v. Aetna Casualty & Surety Company, La.App., 189 So. 365, at page 370.
Counsel for Travelers astutely and most persuasively argues that American *428 Mutual is the primary insurer responsible for the damages caused in this accident through the negligence of Jones, American Mutual's omnibus insured, because:
(1) Both American Mutual and Travelers are obligated on behalf of Boyce-Harvey to pay any judgment for damages caused by the negligence of Jones in loading the truck in question;
(2) Both are subrogated under specific provisions to the rights of Boyce-Harvey to recoup these damages so paid from its negligent employee, Jones, under the jurisprudence above-cited;
(3) But while Travelers can recover such damages from American Mutual as the insurer of Jones individually as the latter's omnibus insuredAmerican Mutual cannot recover such damages from Travelers, since the latter did not provide extended coverage insuring Jones individually.
Were the liability of Travelers predicated simply upon the negligence of Jones, employee of its named insuredand therefore simply a vicarious liabilitythen counsel's skillful argument finds much support in jurisprudence following identical logic to reach the result argued for. Pacific Employers Ins. Co. v. Hartford Accident & Indemnity Company, 9 Cir., 228 F.2d 365; Canadian Indemnity Company v. United States Fidelity & Guaranty Company, 9 Cir., 213 F.2d 658; Maryland Casualty Co. v. Employers Mutual Liability Insurance Co., 2 Cir., 208 F.2d 731.
See discussions of general question: Annotation, "Apportionment of Liability among automobile liability insurers one or more of whose policies provide against any liability if there is other insurance", 46 A.L.R.2d 1163; 8 Appleman's Insurance Law and Practice 333, Section 4914.
However, while the liability of American Mutual rests only upon the presumed negligence of Jones, its omnibus insured, in striking the wire binding the stack of blades so as to cause some of them to fall and injure the unsuspecting plaintiff or failing to check the bundles before striking, etc.; the liability of Travelers is based not only upon Jones' presumed negligence, but also upon the concurrent grounds of the presumed negligence of Boyce-Harvey's manner of stacking the bundles[5] and/or its failure as owner of the premises to afford business invitees reasonably safe premises.
(Thus, it appears to us that in a suit herein by the master (Boyce-Harvey) against the negligent servant (Jones) to recoup the damages paid by the master to a third party (Spurlock) through the negligence of the servant, the servant could rely under res ipsa loquitur upon the master's failure to show that the accident did not occur through the negligent stacking or binding of the bundles by the master or his other servants.)
Since therefore Boyce-Harvey is a joint tort-feasor with Jones, it is solidarily liable with him, LSA-Civil Code, Article 2324, and not merely vicariously liable for his fault. But solidary debtors are each responsible for the entire debt, LSA-Civil Code, Article 2091, and as joint tort-feasor neither Boyce-Harvey nor its subrogee-insurer, Travelers, can recoup the damages *429 for which they have been cast herein from American Mutual as insurer of the other joint tort-feasor, Jones, individually.
Likewise, since Travelers' liability does not attach herein solely by reason of use of any non-owned automobile, the policy clause providing that only excess coverage is afforded[6] when liability so arises, does not come into play.[7]
For these reasons, in our opinion Travelers and American Mutual are co-insurers of the loss sued upon herein, and responsible in proportion to their policy limits in accordance with the "other insurance" clauses of both policies.
Conclusion and Decree.
The judgment of the District Court herein in favor of plaintiff Spurlock and against defendants-appellants Boyce-Harvey and Travelers is affirmed, together with its recognition of American Mutual's intervention for reimbursement of workmen's compensation paid and attorney's fees allowed intervenor; but it is reversed insofar as said judgment dismissed defendants-appellants call in warranty, third party petition, and reconventional demand, upon which judgment is hereby rendered in favor of defendants-appellants, Boyce-Harvey Machinery, Inc. and the Travelers Insurance Company, and against the intervenor-appellee, American Mutual Liability Insurance Company, holding said latter party liable for one-third of all amounts awarded by judgment below and one-third of all costs of District Court and of this appeal.
Affirmed in part; reversed in part.
NOTES
[1] "(d) under coverages A and C, to bodily injury or to sickness, disease or death of any employee of the insured while engaged in the employment, other than domestic of the insured or in domestic employment if benefits therefor are either payable or required to be provided under any workmen's compensation law;

"(3) under coverage A, to any obligation for which the insured or any company as his insurer may be held liable under any workmen's compensation law." (Italics ours.)
[2] See cf. testimony of Jones at Tr.-20: "I pulled the blade off the truck and tied the tag onto it and then Spurlock pulled it onto the truck"; and at Tr.-98, "* * * and he was standing in the truck pulling them on off the stack as I tagged them." Cf. also testimony of Jones explaining why although usually they were individually tagged and stacked prior to shipment, they were not in this instance: "Yes sir, that is the way it is done, but in a case like this [if I had followed the usual process] I would spend at least an hour or two hours unstacking those blades and restacking them and tagging them where I could be doing some thing else and [instead] when he arrived, well, we spent the same time tagging them, you know. * * * Q. Why did you have to wait until the truck came before you cut the * * *. A. That was to keep from handling them twice, you see. We would have [had] to take them off the stack and restack them." (Tr.-104 and 105)
[3] The American Mutual policy contained the usual definition of the insured as "any person [Jones] while using the automobile and any person or organization legally responsible for the use thereof". Under the doctrine of respondeat superior, Boyce-Harvey is legally responsible for the actions of its employee, Jones, while loading the motor vehicle in question; and it is protected under these express provisions of the American Mutual policy against liability to others for injuries caused by the acts or omissions of Jones loading said truck.
[4] (1) Except if Jones' negligence occurred while he was using a car owned or hired by Boyce-Harvey, Insuring Agreement III (2); of course, Travelers argues thatif it is considered that Jones' negligence arose out of the use (loading) of any vehicleit arose out of use of a "non-owned" vehicle. American Mutual argues that the Garig truck fell within the Travelers' policy definition of a "hired automobile" so as to cause Jones to be an omnibus insured of Travelers also, which definition is: "Hired automobile an automobile used under contract in behalf of, or loaned to, the named insured * * *". Cited in support of this argument is Bituminous Casualty Corporation v. Travelers Insurance Company, D.C., 122 F.Supp. 197, where the named insured hired the shipper's truck to deliver loads of lime to designated farms at seventy cents per ton. However, the contract therein to obtain the use of the truck is distinguished from the present contract, which was not to obtain the exclusive use of the truck for purposes of the named insured, but was simply a contract with a general shipper to ship certain articles to various consignees.

In the context of the policy, the "hired automobile * * * used under contract in behalf of * * * the named insured" is equivalent to an automobile owned by the named insured and used at its direction and exclusively for its purposes.
The construction urged upon us by American Mutual might extend the Travelers' coverage to the shipper's truck (or trucks, if the goods were transshipped) so long as any of the consignor's (i. e., Boyce-Harvey, the named insured) goods were en route by such public automotive conveyance; in effect, the consignor's general liability insurance would thus be extended to cover any automotive vehicles used in shipping his goods to their ultimate destination, by whomever owned and wherever used; which we feel to be far beyond the intent of the parties.
[5] These bundles were stacked by Boyce-Harvey's employee, Ben Dunn (who was of course a co-employee of Jones). While he also could be considered an omnibus insured of American Mutual if his preparatory actions were construed to constitute part of the "loading" process, we do not believe that such actions were so continuously associated with or such an integral part of the loading processespecially since the motor vehicle to be loaded had not yet arrivedas to be considered a use of the insured vehicle under the loading clause. It is not necessary to discuss or decide this point, however, since Boyce-Harvey's liability also rested upon the concurrent ground of its duty as owner of the premises of reasonable care to afford business invitees safe premises.
[6] "* * * the insurance under this policy with respect to loss arising out of the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to such automobile or otherwise."
[7] And it may well be argued that Jones' activities, although they might be considered a use (loading) of the insured vehicle within the special context of a motor vehicle liability policy, do not necessarily constitute a "use" of a non-owned vehicle within the different context of a general liability policy.