28995.   FISHER *v.* AMERICAN CASUALTY COMPANY.

Decided July 6, 1942. Rehearing denied July 22, 1942.

*Neely, Marshall & Greene, W. Neal Baird,* for plaintiff.
*Smith, Smith & Bloodworth,* for defendants.

STEPHENS, P. J. (After stating the foregoing facts.) The plaintiff was injured by the alleged negligence of Charles H. Barner. She brought suit against Barner and obtained a judgment. The injury was sustained when Barner, while in the act of delivering to the office in which the plaintiff was employed a new adding machine, negligently caused the new machine to fall on the plaintiff's foot. Barner was the employee of the Underwood-Elliott-Fisher Company and was delivering the new adding machine for his employer at the time the accident occurred. Barner, as such employee, was insured by the defendant. The policy provided that, in the event of an accident within the terms of the policy and the procurement of a judgment by the person injured against the insured, the company would indemnify the insured to the extent of $10,000 for each person who might be injured and to whom the insured might be liable, and that a suit to recover on this judgment to the extent of such liability could be instituted directly against the insurer by the injured person. The policy provided that the

company agreed "to pay on behalf of the insured all sums which the insured should become obligated to pay by reason of the liability imposed upon him by law for damages . . sustained by any person or persons, caused by accident arising out of the ownership, maintenance, or use of the automobile" described in the policy, which automobile the policy provided was to be used by the insured as an employee of the Underwood Company for commercial purposes only. The policy defined "commercial" purposes as being the "transportation or delivery" of goods, merchandise, or other materials, and "uses incidental thereto, in direct connection" with the business occupation of the insured, and provided that "use of the automobile for the purposes stated includes the loading and unloading thereof."

The question presented is whether the plaintiff was injured while Barner, the insured, was engaged in transporting or delivering an article of merchandise for his employer within the terms and coverage of the policy. This coverage included transportation or "delivery" of such products. Transportation or delivery of such products, under the terms of the policy, is included in the loading and unloading of the automobile. If Barner was engaged in the transportation or delivery of the adding machine when, after removing it from the automobile and carrying it into the building where the plaintiff's office was, he placed it on the desk and through negligence caused the machine to fall on her foot, his act, by which the plaintiff was injured, was within the terms and coverage of the policy.

In Maryland Casualty Company v. Tighe, 29 Fed. Supp. 69, which involved a policy with provisions identical with the policy here involved, it appeared that the assureds were engaged in business as fruit and vegetable peddlers; that they were sued in the State court of California; and that they called on the insurer to defend that suit. The insurer brought a suit in the Federal district court for a declaratory judgment. The evidence showed that the assureds were making a delivery of some vegetables to the Picadilly Inn in San Francisco, and their automobile truck, which was the automobile insured, had been parked at the curb across the street from such inn. An assistant of the assureds had carried a load of vegetables from the truck into the inn and intended to return to the truck for more vegetables to be delivered to the inn. As this

assistant was running across the sidewalk toward the truck he struck the plaintiff, a pedestrian, and caused the injuries sued for in the State court. One of the questions in the case was whether the assureds, through their servant, were in the act of unloading the truck and delivering the products when the accident occurred. The court held: "Plaintiff contends '(1) that unloading is completed when the goods are physically removed from the truck, and that the purpose of delivery is entirely different from unloading; (2) that if, under any circumstances, delivery is a part of unloading, the unloading is completed when the delivery is actually made; (3) so far as some future or additional unloading is concerned, it certainly would not start until some physical act was performed on or about the truck for the purpose of effecting such unloading, and the mere intent in the mind of the boy in returning from the Picadilly Inn, crossing the sidewalk and crossing the street, to unload some further goods constituted no act of unloading within the meaning of the policy.' Such a construction of the policy as that contended for is entirely too narrow. Insured was using his truck in making delivery of produce to a customer. When the accident happened the process of unloading was in operation. It was a continuing process, including delivery, and could not be completed until all of the produce was delivered to the inn. The accident happened while the unloading was being consummated. The facts show that the State action and the alleged injury are covered by the policy." See Maryland Casualty Co. v. Tighe, 115 Fed. 2d, 297, where the above decision was affirmed by the Circuit Court of Appeals. For similar cases see Wheeler v. London Guaranty &c. Co., 292 Pa. 156. (140 Atl. 855); Panhandle Steel Products Co. v. Fidelity &c. Co. (Tex. Civ. App.), 23 S. W. 2d, 799; Owens v. Ocean Accident &c. Co., 194 Ark. 817 (109 S. W. 2d, 928). In all of these cases it was held that the unloading of the insured automobile embraced the continuous act of placing the commodities where they were intended to be actually delivered by the use of such automobile.

In State ex rel. Butte Brewing Co. v. District Court, 110 Mont. 250 (100 Pac. 2d, 932) which was a case involving a similar policy, it appeared that the brewing company was engaged in delivering a barrel of beer which was to be delivered into a basement through hinged doors in the sidewalk. The beer had been taken from the

truck and placed on the sidewalk. One of the servants of the brewing company entered the customer's place of business, proceeded to the basement, unfastened the lock under the hinged doors, and then raised a portion of one of the doors above the level of the sidewalk, just as one McCulloh was about to step on it, causing injury to McCulloh. The injured man brought suit against the brewing company, and the brewing company requested the insurer to defend such suit. The insurer declined to do so, and the brewing company then brought suit against the insurer seeking a declaratory judgment as to whether the accident in question was covered by the policy. In that case it was contended by the insurer that the unloading of the truck had been completed, and that since the delivery of the beer was undertaken after the beer had been removed from the truck such delivery was not covered by the policy. The provisions of the policy in that case were identical with the provisions of the policy in this case. The court said: "We hold that under the facts here presented the unloading of the truck was a continuous operation from the time the truck came to a stop and the transportation ceased until the barrel of beer was delivered to the customer. The unloading of the truck can not be said to have been accomplished when the barrel of beer was placed upon the sidewalk," and the policy of insurance involved "specifically covers liability for injuries sustained in loading and unloading, though obviously the truck is not in actual use in that process."

Under the policy the unloading of the adding machine from the automobile included the delivery of the machine. The delivery was accomplished only when the machine was placed on the desk in the plaintiff's office. The unloading was in process when the machine was being placed on the desk. The injury which resulted from the negligence of Barner, the insured, when placing the machine on the desk, was caused by his negligence in unloading the machine. For such injury the defendant is liable uder the terms of the policy.

There is nothing in *Morgan* v. *New York Casualty Co.,* 54 *Ga. App.* 620 (188 S. E. 581), contrary of what is held here. The rourt in that case held: "A policy of insurance which obligated the insurer to pay all claims which the insured might become liable to pay as damages resulting from the use of an automobile truck in the transportation of materials or merchandise, including load-

ing and unloading, and which contained an agreement 'to defend suits for damages even if groundless,' did not obligate the insurer to defend an action based on a claim of injury the proximate cause of which was in no way connected with the operation of the truck." In that case the unloading of the insured truck did not result in the injury. The coal with which the truck had been loaded was being shoveled through a coal chute in the sidewalk, and it was charged that the defendant, who was the assured in the policy in that case, was negligent in leaving the coal chute unattended, thereby causing a pedestrian walking along the sidewalk after dark to be injured. The court in that case said that it was not claimed that the pedestrian's injuries resulted from the negligent operation or use in any way of the insured automobile truck, and there is nothing which "connects the use of the automobile truck, covered in the insurance contract, with the open coal chute; and it was that suit which the plaintiff in the present case, . . called upon the insurance company to defend;" that "so far as the allegations of the Freeman petition show, coal may have been hauled to the coal chute in a wagon, or rolled there in a wheelbarrow;" that "it clearly appears from the allegations of the Freeman petition that the proximate cause of his injuries was, not the use or operation of the truck in transporting materials or merchandise or loading or unloading, but his falling into the open and unattended coal chute, as therein alleged;" and that "the insurance company would not be bound to defend a suit although groundless unless in some way the injuries resulted from the maintenance or use of the automobile truck." It does not appear from the report of the case that the policy involved in the *Morgan* case, like the policy in this case, included the "transportation or delivery" of the merchandise or products of the insured's employer in the insured automobile, together with uses incidental thereto in direct connection with the insured's business occupation, which was delivering adding machines and other products for the Underwood Company exclusively, which use of the automobile for the purposes stated included "the loading and unloading thereof."

It appears that the new machine had been placed on the wing or leaf of the desk and fell on the plaintiff's foot when the other machine was being removed from the desk. It is suggested that if the coverage of the policy extended to the delivery of the machine in

the office upon the desk of the solicitor of the United States Department of Agriculture, the injury to the plaintiff, which was caused by the insured's lifting the old machine from the desk after he had placed the new machine on the leaf of the desk, and thereby causing the new machine to fall on the plaintiff's foot, was not within the coverage of the policy. The "unloading" of the adding machine which the insured had transported consisted, under the terms of the policy, in the final delivery of the machine in the office of the solicitor of the United States Department of Agriculture.

It is alleged in the petition in this suit that the verdict and judgment rendered against the insured in the case of the plaintiff against the insured were based on one or more of the allegations of negligence set forth in the petition in that case. This petition is attached as a exhibit to the petition in the present suit. In that petition it was alleged that the insured "brought to the office of the solicitor the new machine for final delivery and was expected to install the same and return the machine which had been in use temporarily," and that it was the duty of the insured, under his "contract or arrangement" with his employer, "to install said new machine on the desk provided by the government for that purpose," and that in order to install the new machine the insured "had to remove the other machine which had been in temporary use." It therefore appears from the allegations of the plaintiff in her suit against the insured that it was within the insured's contract of carriage with his employer by which he was to deliver the new ma-machine to the office of the solicitor of the United States Department of Agriculture, that such delivery consisted in installing the new machine on the desk of the solicitor, and that in so installing the new machine it was the insured's duty to remove from the desk the old machine which had been left there in temporary use. This old machine, as appears from the allegations, had been temporarily delivered by the insured's employer, through the insured, and placed on a desk in the office of the solicitor for temporary use. It was therefore within the contract of delivery that the new machine should be placed on the desk and the old machine be taken therefrom by the insured for the purpose of being returned to his employer. The contract of delivery was not completed during the time the two machines were on the desk. It was completed only when the old machine had been lifted therefrom by the insured for the purpose of returning it to his employer.

Whether, in the suit by the plaintiff against the insured to recover on his alleged negligence in causing her injury, it was a question of fact for the jury whether the defendant was negligent and whether this negligence constituted the proximate cause of the injury, the verdict found for the plaintiff against the defendant established as a matter of law, in so far as the present suit is concerned, that the defendant's negligence was the proximate cause of the injury. In the present suit there is presented no issue for the jury as to whether the defendant was negligent and whether that negligence was the proximate cause of the injuries. If the injuries arose from the act of the insured which was within the coverage of the policy sued on, which this court now holds, the plaintiff is, under the terms of the policy, entitled to recover of the insurer the amount of the verdict and judgment rendered against the insured in the suit against him by the plaintiff.

Under the allegations the defendant was liable for the amount of the judgment rendered against Barner, and the judge erred in dismissing the action.

The above opinion represents the opinion as originally written, with modifications and changes on motion for rehearing.

*Judgment reversed. Sutton, J., concurs. Felton, J., dissents.*