## AMERICAN CASUALTY COMPANY *v.* FISHER.

No. 14337. DECEMBER 3, 1942.

*Smith, Smith & Bloodworth* and *Croom Partridge,* for plaintiff in error.

*Neely, Marshall & Greene* and *W. Neal Baird,* contra.

REID, Chief Justice. Before a ruling was made by the Court of Appeals in this case, a question respecting the liability under the insurance policy involved was propounded to this court; but deeming the question incomplete, we declined to answer it. *Fisher* v. *American Casualty Co.,* 194 *Ga.* 157 (21 S. E. 2d, 68). The Court of Appeals then rendered an opinion concurred in by two of the Judges. *Fisher* v. *American Casualty Co.,* 67 *Ga. App.* 784 (21 S. E. 2d, 306). We granted certiorari.

A full statement of the facts may be found in the report of this decision by the Court of Appeals, and only necessary reference to the pertinent facts will be here made. As a preliminary part of the decision the Court of Appeals made the following statement:

"The plaintiff was injured by the alleged negligence of Charles H. Barner. She brought suit against Barner, and obtained a judgment. The injury was sustained when Barner, while in the act of delivering to the office in which the plaintiff was employed a new adding machine, negligently caused the new machine to fall on the plaintiff's foot. Barner was the employee of the Underwood-Elliott-Fisher Company, and was delivering the new adding machine for his employer at the time the accident occurred. Barner, as such employee, was insured by the defendant. The policy provided that, in the event of an accident within the terms of the policy and the procurement of a judgment by the person injured against the insured, the company would indemnify the insured to the extent of $10,000 for each person who might be injured and to whom the insured might be liable, and that a suit to recover on this judgment to the extent of such liability could be instituted directly against the insurer by the injured person. The policy provided that the company agreed 'to pay on behalf of the insured all sums which the insured should become obligated to pay by reason of the liability imposed upon him by law for damages . . sustained by any person or persons, caused by accident arising out of the ownership, maintenance, or use of the automobile' described in the policy, which automobile the policy provided was to be used by the insured as an employee of the Underwood Com-

pany for commercial purposes only. The policy defined 'commercial' purposes as being the 'transportation or delivery' of goods, merchandise, or other materials, and 'uses incidental thereto, in direct connection' with the business occupation of the insured, and provided that 'use of the automobile for the purposes stated includes the loading and unloading thereof.' "

The Court of Appeals in its decision then treated the accident resulting from the negligence of the employee of the Underwood Company in removing an adding machine from a table on which he had placed another adding machine, of which he was making delivery, as coming within the terms of liability imposed upon the insurance company under its indemnity contract. The insuring clause of the policy was as follows: "To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident arising out of the ownership, maintenance, or use of the automobile." It was further stated on the face of the policy: "Item 5. The purposes for which the automobile is to be used are commercial. (b) The term 'commercial' is defined as the transportation or delivery of goods, merchandise, or other materials, and uses incidental thereto, in direct connection with the named insured's business occupation as expressed in item 1. (c) Use of the automobile for the purposes stated include the loading and unloading thereof."

The suit resulting in a judgment against Barner merely declared upon his negligence in respect to his manner of handling the adding machine, and in removing it from a table which it was charged in the petition he should have known would become upset "immediately upon removal of the machine which had been in temporary use." It was charged in the petition that it was Barner's duty, "under his contract or arrangement with the Underwood-Elliott-Fisher Company, to install said new machine on the desk provided by the Government for that purpose," and to do this it was necessary to remove the other machine which had been in temporary use. No mention was made of any automobile or of any connection between the delivery or installation of the machine and any particular kind of transportation. It was simply a suit for per-

sonal injuries growing out of the aforementioned negligence. But in the present action against the casualty company the plaintiff set out by amendment her claim that at the time of the injury Barner was completing the delivery of the machine in the furtherance of his business for the Underwood Company, that the delivery was incidental to the use of the insured automobile as a commercial car, and that this delivery constituted a part of the unloading of the machine. The Court of Appeals accepted the theory presented by these latter allegations.

Contracts of insurance, like other contracts, are subject to the rule of law that the intention of the parties must be ascertained. "The cardinal rule of construction is to ascertain the intention of the parties. If that intention be clear, and it contravenes no rule of law, and sufficient words be used to arrive at the intention, it shall be enforced, irrespective of all technical or arbitrary rules of construction." Code, § 20-702. See, in connection with interpretation of contracts, Code, § 20-704 (2), as follows: "Words generally bear their usual and common signification. . ." "Insurance is a matter of contract. An insurance policy is a contract of indemnity for loss, and the intention of the parties, if it can be ascertained, must determine the sense in which the terms employed are used. This intention of the parties must be sought for in accordance with the true meaning and spirit in which the agreement was made and expressed in the written instrument, and the ordinary and legal meaning of the words employed must be taken into consideration." *North British & Mercantile Insurance Co.* v. *Tye*, 1 *Ga. App.* 380 (58 S. E. 110).

This was an automobile policy, and was so denominated on its face. A policy containing the same terms was before the Court of Appeals in *Morgan* v. *New York Casualty Co.*, 54 *Ga. App.* 620 (188 S. E. 581), and it was ruled that the policy "did not obligate the insured to defend an action based on a claim of injury the proximate cause of which was in no way connected with the operation of the truck." As pointed out by the Court of Appeals in its opinion in the present case, there is authority to the contrary from some jurisdictions. Some of these cases were reviewed in State ex rel. Butte Brewing Co. *v.* District Court, 110 Mont. 250 (100 Pac. 2d, 932), where the conclusion was reached that the loading of the truck "would embrace the entire process of moving

the commodities from their accustomed place of storage, or the place from which they were being delivered, until they had been placed on the truck," and that "the unloading thereof embraced the continuous act of placing the commodities where they were intended to be actually delivered by use of the truck. Other decisions upon like reasoning, which have construed the policy to embrace liability of this character, are Owens v. Ocean &c. Co., 194 Ark. 817 (109 S. W. 2d, 928), which held that there was liability under such a policy insuring an undertaker where a woman was injured while being carried on a stretcher from her home to the insured ambulance; Wheeler v. London &c. Co., 292 Pa. 156 (140 Atl. 855), where steel girders had been transported by a truck and were being placed in a building, having been removed from the truck, but not finally "delivered" when an injury occurred. In Panhandle. Steel Products Co. v. Fidelity &c. Co. (Tex. Civ. App.), 23 S. W. 2d, 799, the policy was held to cover negligence in that case; but there the iron beams being removed from the truck had only been partially removed. This is not exhaustive of that side of the question, but it is intended only to call attention to cases typical of application of the view which has been taken by the Court of Appeals. We are of the opinion this view overlooks the real intention of the parties as manifested in their contract, and that it tends to import into this contract the obligations arising out of another one, to wit, a contract between Underwood-Elliott-Fisher Company, under which Barner was delivering and installing an adding machine. The acts of negligence resulting in the judgment against Barner seem to us to be entirely disconnected from and disassociated with the maintenance, use, or operation of the automobile. It is true that the automobile had transported the machine; but to give to the word "unload" its ordinary significance, it seems to us the machine had been unloaded when it was taken from the automobile and carried by hand to an office of the building and placed on the desk. It not only had been removed from the automobile but had definitely come to rest. It is easy to suppose a case where the driver of the car had taken an employee who was to install the machine to the Glenn building and had driven away, leaving the installation to the other person. In such a case the same element of transportation and "delivery" would be present; but we can hardly suppose

in that case that the use of the automobile would in such event be regarded as fixing liability under the policy. In dealing with a similar policy Mr. Justice Fairchild, in Stammer *v.* Kitzmiller, 226 Wis. 348 (276 N. W. 629, 631), said: "The stipulation to pay . . does not carry the liability of the insurer beyond what may be described as the natural territorial limits of an automobile and the process of loading and unloading it. When the goods have been taken off the automobile and have actually come to rest, when the automobile itself is no longer connected with the process of unloading, and when the material which has been unloaded from the automobile has plainly started on its course to be delivered by other power and forces independent of the automobile and the actual method of unloading, the automobile then may be said to be no longer in use. The precise line at which the unloading of the automobile ends, and a further phase of commerce such as the completion of delivery begins after unloading, may in some cases be difficult of ascertainment; but where, as here, the merchandise had been removed from the truck and considerable time had elapsed after anything was done which could reasonably be said to be connected with the actual unloading, there is no difficulty in limiting the responsibility of the insurer who covers loading and unloading operations."

In Zurich &c. Co. *v.* American Mutual Liability Insurance Co., 118 N. J. L. 317 (192 Atl. 387), the court was dealing with the liability under a policy the terms of which were similar to those in the present case, and the facts were stated as follows: "It is stipulated that a chauffeur of assured 'had driven an automobile belonging to said concern to the store of Borer, who was a customer of said corporation, and had removed from said automobile truck a can of milk and a cake of ice, which milk and ice the chauffeur had carried from said automobile to the store of the said Borer, and, while placing the milk and ice in an icebox maintained in the interior of the premises of said Borer, injured the said Borer.'

"The contracting parties plainly contemplated an accident immediately identified with the ownership, maintenance, use, or operation of the vehicle; and the mishap which befell Borer does not fall into that category. The natural or ordinary sense of such words is not inclusive of the service of which the injury was the direct emanation; and in the ascertainment of the common inten-

tion, the normal significance of words both singly and in collocation is adhered to, unless a special meaning is shown by the circumstances. Williston on Contracts (rev. ed.), §§ 618, 650.

"These words are plain and unambiguous, and delimit with understandable certainty the liability imposed upon the insurer. They relate to the vehicle itself, and exclude acts that are only remotely connected with its ownership, maintenance, use, or operation. A construction that would include within the coverage of a clause so phrased the thing being done when this accident happened would impart to it an artificial meaning at variance with the apparent intention of the parties. . .

"We have no occasion to determine whether an accident occurring in the course of the 'loading or unloading' of a vehicle within the policy coverage arises in connection with its 'maintenance, use, or operation,' within the intendment of plaintiff's policy. Here the unloading of the merchandise had been completed when the accident occurred. The assured's servant was then engaged in the servicing of the delivered milk upon Borer's premises, an act entirely disconnected from the unloading of the article from the vehicle."

The views last quoted seem to us to accord more fully with reason, with the intention of the parties as expressed in their contract, and with the holding of the Court of Appeals in *Morgan* v. *New York Casualty Co.*, supra, which seems to be the only decision in our State that has specifically dealt with this question. Unless a policy in such a case made it clear that a liability of such a different nature was intended to be assumed, or risks of such different character embraced, we should be very slow to import into it those views. Accordingly, we hold that the Court of Appeals erred, and that the trial judge correctly sustained the demurrer raising these questions.

*Judgment reversed. All the Justices concur.*