MARYLAND CASUALTY CO. v. DALTON COAL & MATERIAL CO. et al.

No. 339.

United States District Court
W. D. Missouri, Central Division.

Jan. 21, 1949.

Moser, Marsalek, Carpenter, Cleary & Carter, and John S. Marsalek, all of St. Louis, Mo., and Ragland, Otto, Potter & Embry, of Jefferson City, Mo., for plaintiff.

Howard B. Lang, Jr., of Columbia, Mo., for defendant M. F. A. Mut. Ins. Co.

Ralph L. Alexander, of Columbia, Mo., for defendants Sam F. Dalton and Dalton Coal and Material Co.

REEVES, Chief Judge.

The defendants have filed a motion for summary judgment on the two-fold ground "(a) That plaintiff's time to file brief in support of its complaint has expired", and, "(b) That there is no genuine issue as to any matter of fact and that defendants are entitled to judgment as a matter of law."

After filing the motion for summary judgment the plaintiff submitted its brief and joined issue on questions of law with the defendants. On October 18th, last, during the session of the regular term of court in the Central Division at Jefferson City, the parties (except of course the plaintiffs in the state court, Geraldine Edwards Reid and C. P. Reid her husband) stipulated that they would submit the case upon an Agreed Statement of Facts. This was done on November 29, 1948. Both parties have now supplied briefs in support of their legal contentions on the facts agreed upon. Subdivision (b) of the defendants' motion for a summary judgment is as follows: "That there is no genuine issue as to any matter of fact and that defendants are entitled to judgment as a matter of law."

Since the parties have agreed upon the facts, it would follow that only legal questions are raised and both parties have asked for the identical relief covered by the quoted portion of the motion for a summary judgment.

From the agreed statement of facts and from the pleadings it appears that Dalton Coal and Material Company was at all times mentioned in the pleadings engaged in the retail coal business in the City of Columbia, Missouri, and that deliveries of coal were made by trucks operated by employees of the said Dalton Coal and Material Company. For its protection against liability, on January 22, 1947, it obtained from the plaintiff a policy of liability insurance for the term beginning February 1, 1947 and ending February 1, 1948. By the terms of this policy, and for a stipulated premium, the plaintiff agreed to in-

demnify the assured for liability claims established against it, not exceeding $20,000 for bodily injury on each person, or an aggregate of $40,000 in any one accident for all persons. The policy covered the delivery trucks used by its assured in delivering coal to its customers. The policy was characterized as a "Comprehensive Automobile Liability Policy." By the specific terms of the policy the plaintiff agreed:

"I. To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, * * * because of bodily injury * * * sustained by any person or persons, caused by accident and arising out of the ownership, *maintenance or use of any automobile.*" (Emphasis mine.)

This was followed by a definition of the word "use", as follows:

"Conditions

* * *

4. Purposes of Use Defined. * * * (c) Use of the automobile for the purposes stated includes the loading and unloading thereof."

There was a further provision in the policy as follows:

"Insuring Agreements

* * *

II. * * * It is further agreed that as respects insurance afforded by this policy the company shall (a) defend in his name and behalf any suit against the insured alleging such injury * * * and seeking damages on account thereof *even if such suit is groundless, false or fraudulent;* * * *." (Emphasis mine).

The right was vouchsafed to the company "II. * * * (a) * * * to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the company."

The foregoing excerpts set forth the contractual arrangement between the insurer and the assured so far as relevant in determining the issues in the case. It appears from the Agreed Statement of Facts that the assured, by its employees and by the use of one of its automobiles covered by the policy, made delivery of coal to one John

Moscow in Columbia, Missouri, about 9 A.M. on March 24, 1947. The coal was delivered to or in a building owned by the said John Moscow; and, quoting from the Agreed Statement of Facts:

"The delivery was made by means of an automobile truck equipped with a belt conveyor. The driver removed the cover from the coal chute. The cover was not fastened in any way, and had no fastening device attached to it. He extended the belt conveyor into the chute and thereby unloaded the coal. The driver, using his glove, wiped out the inside of the rim in which the manhole cover rested and replaced the cover inside of the rim. The driver, upon finishing his work, left the scene."

About three and one-half hours later, on the same day, one of the plaintiffs in the state court proceeding, namely, Geraldine Edwards Reid, while walking on the sidewalk at the point where the coal was unloaded, "stepped upon the above mentioned metal coal-hole cover located in the sidewalk, whereupon said cover slipped out of place or turned, permitting her to fall into the opening beneath, whereby she sustained personal injuries."

A few days later, towit, April 2, 1947, the injured woman with her husband joining, through their attorney, made claim upon the coal company for damages. All interested parties were notified of the claim, including the plaintiff and another insurer carrying a general liability policy on the coal company. The other insurer denied liability immediately after being notified. Upon receipt of the notice plaintiff investigated, as was its right under its policy, the circumstances of the claimed injury and after some further negotiations and correspondence "declined to take any part in the proposed settlement."

On August 12, 1947 the plaintiff advised its assured:

"* * * that the alleged accident was not covered by the Maryland Casualty Company's policy above mentioned, because the replacing of the cover of the coal hole was not in any way connected with the use of the Dalton Coal Company's truck; furthermore, that the accident was not covered under the 'loading and unloading' provision

of the policy because the act of unloading was complete when the coal had been delivered to the place designated for the delivery."

The plaintiff further advised its assured that it "could not protect them under the provisions of the policy, and declined to handle the claim."

On the same day Mrs. Geraldine Edwards Reid and her husband. C. P. Reid, filed suit in the Circuit Court of Boone County, Missouri, wherein she joined as defendants the owner of the property as well as plaintiff's assured. In the petition or complaint the plaintiffs in the state court alleged that the several parties were negligent concurrently and jointly and that the particular negligence of the plaintiff's assured was a failure on the part of the coal company's driver and employee,

"* * * to replace and fasten said metal disc over said manhole, spilled and poured coal around the opening and support provided for said metal disc cover, which was thereby prevented from being replaced firmly and securely, and failed to sweep the coal and coal dust at and about the seat and supports provided for said metal disc cover before the same was replaced; * * *."

The averment of negligence against the property owner was that he negligently permitted the metal disc covering said coal chute "to be in a state of disrepair, etc."

The only question for decision is, whether the plaintiff's "Comprehensive Automobile Liability Policy" was effective to protect its assured under the facts as above stated. This, with other facts as they become pertinent, will be noticed.

■ 1. Notwithstanding the agreement of the parties that the coal company's driver carefully replaced the metal disc covering the coal chute as he found it, nevertheless the suit of the claimed injured parties alleged negligence on his part in replacing the covering for the coal chute. This would be sufficient to compel the plaintiff to defend the action under its agreement to defend suits against its assured "even if such suit is groundless, false or fraudulent." The fact, therefore that the parties (save the plaintiffs in the state court) agreed that there was no negligence on the part of the driver, nevertheless the plaintiff would be bound to defend the suit if otherwise the terms of the policy extended to the act of replacing the metal disc over the chute where the coal was unloaded.

2. It was the plaintiff's undertaking by its "Comprehensive Automobile Liability Policy" to extend its protection to its assured in the use of his automobile or motor truck during the process of unloading the coal hauled by it. We will pause to inquire whether the policy was "comprehensive" enough to cover any negligent act of the assured, through its employees, in the process of unloading.

■ To unload the coal at the time mentioned, plaintiff's assured used a conveyor running down through the chute or opening. This necessarily involved the removal of the metal disc as a part of the process of unloading. It was the duty of the assured's driver to replace the lid or metal disc covering the chute opening when the operation was completed. It is the plaintiff's contention that when the unloading operation was technically completed its policy obligation ended and that the act of the driver in' replacing the lid was beyond the scope of its coverage. This position is untenable. It was a part of the unloading operation, not only to remove the lid for the use of the coal conveyor but it was a clear duty of the assured's driver, as a part of the unloading operation, to replace the metal covering as he found it and otherwise to leave the sidewalk free from obstructions or defects insofar as his operations were concerned.

An apt case cited by the defendants, and clearly in point by analogy, is the case of Schmidt v. Utilities Ins. Co., 353 Mo. 213, 182 S.W.2d 181, 183, 154 A.L.R. 1088. In that case the policy protected the automobile or truck owner from liability that might accrue in the use of an automobile delivery truck. The specific language was:

"Because of bodily injury * * * sustained by any person or persons, caused by accident and arising out of the ownership * * * or use of the automobile."

This identical language is used in the policy under observation. However, the policy now being considered was broader for the reason that it included the use of the automobile in unloading the material hauled by it. The driver of the truck in the case last cited had left some blocks of wood on the sidewalk, and which blocks he had used as a ramp in backing his truck upon the sidewalk for unloading purposes. 353 Mo. Loc. cit. 223, 182 S.W.2d loc. cit. 186, 154 A.L.R. 1088, the court said:

"We hold that the negligent acts of Coal Company's truck drivers in placing the blocks on the sidewalk, under the circumstances shown by the record, and respondent's injuries therefrom, arose out of the use of Coal Company's automobile trucks within the meaning, intent and purpose of the policy."

An intention to cover the acts of the assured's driver in this case can be more easily deduced from the policy or contract under observation and discussion for the reason that it is not only characterized as a "Comprehensive Automobile Liability Policy", but it is made to include the unloading of the automobile as well as the use thereof. The Schmidt v. Utilities Insurance Co. case, supra, is a weaker case upon the facts than the case at bar.

Cases cited by the plaintiff have been examined but they differ upon the facts from the case being considered.

3. As said by Judge Sibley of the 5th Circuit Court of Appeals in Liberty Mut. Ins. Co. v. Lee, 117 F.2d 735, loc. cit. 736, where the insurance company had brought a suit precisely as the plaintiff in this case:

"The Insurance Company's proper course is to defend the suit in the State court according to its policy contract."

Such was unquestionably the duty of the plaintiff under this plaintiff's policy. It failed to do so, and other arrangements were made by its assured, and another insurer, for the defense of the case.

It is stipulated here that "a reasonable fee for the services performed and to be performed in this suit by the attorneys representing defendants Sam Dalton and Dalton Coal and Material Company" is $350. The only relief asked by the defendants in their answer is attorneys' fees in the sum of $500 for plaintiff's vexatious refusal to carry out its policy obligations. Since it is agreed that $350 would be a reasonable fee, the same should be allowed for the reason that the plaintiff's refusal to defend was without just reason or excuse. Since it is now held that the plaintiff was obligated to defend the action, the defendant M. F. A. Mutual Insurance Company by its contract under such circumstances is relieved of liability and it should be discharged with its costs. It will be so ordered.