## MARYLAND CASUALTY CO. v. DALTON COAL & MATERIAL CO.

### No. 13981.

United States Court of Appeals
Eighth Circuit.

Sept. 8, 1950.

John S. Marsalek, St. Louis, Mo. (Moser, Marsalek, Carpenter & Carter, St. Louis, Mo., on the brief), for appellant.

Howard B. Lang, Jr., Columbia, Mo. (Ralph L. Alexander and Alexander, Ausmus & Harris, all of Columbia, Mo., on the brief), for appellees.

Before GARDNER, Chief Judge, and THOMAS and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

An insurer sought a declaratory judgment against its insured, to the effect that its "Comprehensive Automobile Liability Policy," upon the insured's fleet of coal trucks, did not cover an accident which had occurred to a third party and the suit for

personal injuries which resulted therefrom, when one of the insured's truck drivers allegedly failed to properly replace a manhole cover in a public sidewalk, on making delivery of some coal to a customer's premises. Also joined as a party defendant was another insurance company which had issued to the insured a "General Liability Insurance Policy."

The District Court entered a judgment, D.C., 81 F.Supp. 895, 897, declaring that the accident was within the coverage of the "Comprehensive Automobile Liability Policy"; that the insurer accordingly owed the duty of defending the resulting suit, under the standard provision of its policy to "defend * * * any suit * * * even if * * * groundless, false or fraudulent;" and that it equally was obligated to satisfy such liability (within its policy limits) as might be imposed upon the insured therein. The court further held that in instituting the declaratory action the insurer had been guilty of "wrongful and vexatious" conduct and that the insured therefore was entitled to a judgment against it for $350 as an attorney's fee, under Mo.R.S.A. § 6040. The insurer has appealed.

The "Comprehensive Automobile Liability Policy" provided insurance against "the liability imposed upon (the insured) by law for damages, * * * because of bodily injury, [including death] * * *, sustained by any person * * *, caused by accident and arising out of the ownership, maintenance or use of any automobile." Another clause defined the "use" of an automobile as including "the loading and unloading thereof." No definition, however, was given of "unloading," so that the content of that term for insurance purposes was in the situation a question of Missouri law.

Two views have in general been taken by the courts of the scope of the term "unloading" in automobile liability insurance policies such as that here involved. One line of cases, of which Stammer v. Kitzmiller, 226 Wis. 348, 276 N.W. 629, is illustrative, has adopted the "coming-to-rest" doctrine, under which the term "unloading" is regarded as covering only the process of removing goods until they can be said to

have come to rest, in the sense that a particular operation may not be directly connected to a use of the automobile. The other line of cases, of which Pacific Automobile Ins. Co. v. Commercial Casualty Ins. Co., 108 Utah 500, 161 P.2d 423, 160 A.L.R. 1251, is illustrative, has adopted the broader "complete-operation" doctrine, under which "unloading" is regarded as covering all the operations which are required in any specific situation to effect a completed delivery of the goods. (For a list of decisions under each doctrine, see Annotation, 160 A.L.R. 1259.)

It was the trial court's view, 81 F.Supp. 895, that the "complete-operation" doctrine was the law of Missouri. This appraisal was made after taking into account the holding in Schmidt v. Utilities Ins. Co., 353 Mo. 213, 182 S.W.2d 181, 183, 154 A.L.R. 1088. In that case, a truck driver, in delivering coal to a hospital, used some wooden blocks, which he found along the hospital wall, to enable him to back his wheels up over the curb. After he had unloaded the coal through a sidewalk man-hole, he stacked the wooden blocks on the sidewalk, where, some six hours later, a pedestrian stumbled over them in the dark and was injured. Without discussion of the question as an operation of "unloading," the Missouri Supreme Court held broadly that the accident was within the general language of the coverage clause (identical with that here), "arising out of the * * * use" of the truck.

On the indication and implication of this holding, there is no basis for us to say that the trial court's appraisal of the Missouri law was erroneous. No Missouri case points to a more restrictive concept with respect to any collateral operation involved in completing a delivery of goods. And the logic of the "coming-to-rest" cases is not so naturally or legally compelling, against that underlying the "complete-operation" doctrine, as to leave us with the conviction that the Missouri courts probably would not apply the concept of automobile "use" in the Schmidt case to every collateral incident involved in completing a delivery as a matter of "unloading." In a certain sense, it is true, as the insurer ar-

gues, that the employment of wooden blocks to get a truck up over the curb has a direct relationship to the "use" of the vehicle, which the collateral opening and closing of a man-hole cover does not. But it is to be noted that the Schmidt case does not rest upon a coverage clause of "directly connected with the use" but of "arising out of the use."

Even, however, if the insurer's argument could be regarded as of force, the most that could be said in the situation would be that the question is one of unsettled law in Missouri and so may be doubtful. That, however, is not of aid to the insurer here, for we have repeatedly said that on doubtful questions of state law, unless we have a clear conviction that the trial judge is in error, we will accept his considered appraisal of the local law of his jurisdiction. See Nolley v. Chicago, Milwaukee, St. P. &. P. R. Co., 8 Cir., 183 F.2d 566, and cases there cited.

The only other question[1] is whether the court had the right to enter a judgment against the insurer for an attorney's fee, under Mo.R.S.A. § 6040. That statute, so far as here pertinent, provides: "In any action against an insurance company to recover the amount of any loss under a policy of * * * liability * * * insurance, if it appear from the evidence that such company has vexatiously refused to pay such loss, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed ten per cent on the amount of the loss and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict."

The Missouri Supreme Court has said that this statute is penal in nature and so must be strictly construed; and that "no one ought to be allowed to profit by it, un-less he brings himself strictly within the letter of its provisions." Non-Royalty Shoe Co. v. Phoenix Assurance Co., 277 Mo. 399, 420, 210 S.W. 37, 42. On this basis, and by any other reading of the statute as well, we do not believe that an attorney's fee could be assessed in this proceeding. We are unable to see how a suit instituted by an insurer for a declaration of its coverage obligation as to an undetermined liability of its insured to a third party can on any basis be said to fall within the specific language, "any action against any insurance company to recover the amount of any loss under a policy * * *." That the statute can only be read naturally is further apparent from the fact that it provides no independent right to recover an attorney's fee but only as an "addition to the amount" of a recovered loss.

Beyond this, even in "any action against any insurance company to recover the amount of any loss under a policy," no attorney's fee can be allowed under the statute, where the refusal to pay the loss has been in good faith and on reasonable ground, as, for example, where a controlling legal question is involved upon which the lawyers of the state may properly differ in opinion. Cf. World Fire & Marine Ins. Co. v. Carolina Mills Distributing Co., 8 Cir., 169 F.2d 826, 833, 4 A.L.R.2d 523; Western Fire Ins. Co. v. University City, 8 Cir., 124 F.2d 698, 700, 701; New York Life Ins. Co. v. Calhoun, 8 Cir., 114 F.2d 526, 536, 537. An insurer's attempt to have a substantial, unsettled and controlling question of state law determined, upon which there exist two opposing arrays of formidable authority, therefore, cannot ordinarily be regarded as a vexatious refusal to pay a loss.

The judgment of the trial court will be modified by striking from it the provision for the allowance of an attorney's fee, and, as so modified, it will be affirmed.

1. The "General Liability Insurance Policy," issued by another insurance company to the insured, as referred to in the first paragraph of the opinion, does not require discussion here, for, while it covered generally the operations incidental to the insured's business, it specifically excluded from such coverage any use of the insured's automobiles, including loading and unloading, "while away from premises owned, rented or controlled by the named insured."