49904. HODGES APPLIANCE COMPANY v. UNITED STATES FIDELITY & GUARANTY COMPANY et al.

EVANS, Judge.

Hodges Appliance Company brought suit against United States Fidelity & Guaranty Company because of the insurer's failure to defend an action at law filed against Hodges. It was alleged that Hodges had purchased an insurance policy from defendant, which insured plaintiff's Chevrolet truck as to certain hazards, including damages incurred in "loading and unloading." It was further alleged that on November 28, 1973, Hodges sold certain furniture to Deborah Schofield and James Schofield, and made delivery by using the aforementioned Chevrolet truck on the same day; that the Schofields were not at home when the furniture was delivered; that the landlord opened the door to their premises and an upholstered sofa was unloaded and placed on top of the floor furnace and "got on fire which fire spread to other contents and building." The Schofields filed suit against Hodges; Hodges called on the insurer to defend the action, but the insurer denied coverage and refused to defend. Hodges then employed his own attorney, and entered into a compromise agreement with the Schofields. Hodges then sued for the amount of damage it was required to pay the Schofields; for attorney fees expended in that case; and for penalty and attorney fees in the present action.

Defendant insurer moved to dismiss plaintiff's action, relying upon the authority of *American Cas. Co. v. Fisher,* 195 Ga. 136 (23 SE2d 395); and after argument the lower court dismissed the action and granted a certificate for immediate review. Hodges appeals. *Held:*

1. The question here is whether "loading and unloading," as provided for in the insurance policy, was involved in the damage to and destruction of Schofield's sofa and other property. To put it another way, when Hodges' agents unloaded the sofa onto a *lighted floor*

*furnace* on November 28, 1973, while the Schofields were away from home, resulting in the burning and destruction of their property, was coverage afforded under the "unloading" clause in the policy of insurance? And finally, was anything decided by the Supreme Court of Georgia in the *Fisher* case, supra, which is controlling as to the case sub judice?

2. Under our present "notice pleadings" all pleadings are construed most favorably towards the pleader. See *Harper v. DeFreitas,* 117 Ga. App. 236 (1) (160 SE2d 260); *Hunter v. A-1 Bonding Service,* 118 Ga. App. 498, 499 (2) (164 SE2d 246). And now, under the Civil Practice Act, and notice pleadings, when a motion to dismiss a complaint is made, the allegations thereof must be construed most favorably towards the party opposing the motion. Under such construction, it follows that the floor furnace on this 28th day of November must be presumed to have been a *lighted* floor furnace; especially as there is no allegation in the complaint or suggestion whatever that the floor furnace was lighted *after* the sofa was left on top of same. Further, it must be presumed the fire began to burn the sofa immediately after it was unloaded onto the top of the floor furnace, as the time of the beginning of the burning is not given.

3. The policy of insurance does not describe the meaning of the term "loading and unloading." We do not find any difficulty in understanding the meaning of the term; but if any ambiguity whatever is presented because of a failure to declare the meaning of the term, such ambiguity must be construed against the insurance company, and in favor of the party who purchased the insurance policy because the policy was prepared and written by said insurer. See Code § 20-704 (5); *Samples v. Ga. Mutual Ins. Co.,* 110 Ga. App. 297, 299 (138 SE2d 463); *Mass. Benefit Life Assn. v. Robinson,* 104 Ga. 256 (2) (30 SE 918); *Johnson v. Mutual Life Ins. Co.,* 154 Ga. 653 (1, 2) (115 SE 14); *Home Indemnity Co. v. Godley,* 122 Ga. App. 356 (5) (177 SE2d 105); *Davis v. United &c. Life Ins. Co.,* 215 Ga. 521, 527 (111 SE2d 488).

4. In *Elliott v. Firemen's Ins. Co.,* 111 Ga. App. 49 (140 SE2d 524) at page 50, the term "unloading" as used in a similar policy was under consideration, and it was

held that the unloading process involved several steps. First, the patient was lifted by stretcher from the ambulance and the stretcher *came to rest* when placed on the floor of the porch of his home. The stretcher *came to rest* a second time when carried into the living room. The third phase of the unloading then occurred when the attendants sought to lift the patient from the stretcher onto a chair and allowed him to fall and suffer an injury. This third phase of the unloading was held to be a part of the "unloading" as provided for in the insurance policy, and was covered thereby, and it was held that *American Cas. Co. v. Fisher,* 195 Ga. 136, supra, was not authority to the contrary.

5. We now consider the case relied upon by the insurance company, to wit: *American Cas. Co. v. Fisher,* 195 Ga. 136, supra (reversing *Fisher v. American Cas. Co.,* 67 Ga. App. 784, 21 SE2d 306). The facts in that case are readily distinguishable from the facts in the present case. In *Fisher,* a new adding machine was unloaded and brought into an office and placed on a desk, *where it definitely and absolutely and finally came to rest,* in close proximity to another adding machine which was already resting on the desk. For aught that appears both adding machines would have remained in that fixed position on the desk for the next 20 years unless a negligent act of some person intervened. *And that is exactly what happened!*

An individual, perhaps the same person who had emplaced the new adding machine on the desk, at some unspecified later time, lifted the other adding machine from the desk, without regard to the consequences, and thereby left the desk in a state of imbalance. Whereas the desk would have supported two adding machines as they were positioned, it would not support one alone because of the improper distribution of weight which caused an imbalance as to the desk and only one adding machine. The new adding machine was caused to fall, striking plaintiff's foot, resulting in injury. The situation there was somewhat analogous to two children playing on a see-saw; one goes up, the other goes down; and the weight of each serves as a counter-balance to the other. But if one child suddenly jumps from the see-saw an imbalance is

created, and the other child will suddenly fall all the way to the ground, and may receive an injury.

The Supreme Court, in *Fisher,* supra, correctly held that the act of unloading was completed when the new adding machine was deposited on the desk and came to rest; and it is significant that it cites as authority the case of Stammer v. Kitzmiller, 226 Wis. 348 (276 NW 629), which holds: "The precise line at which the unloading of the automobile ends and a further phase of commerce such as the completion of delivery begins after unloading may in some cases be difficult of ascertainment, but where, as here, *the merchandise had been removed from the truck and considerable time had elapsed after anything was done which could reasonably be said to be connected with the actual unloading, there is no difficulty in limiting the responsibility of the insurer who covers loading and unloading operations."* (Emphasis supplied.) Now let us suppose the person who unloaded the new adding machine in the *Fisher* case had placed it upon a desk *which was at that very moment on fire!* Could it be contended that because the new adding machine had *come to rest,* the unloading was at an end and no coverage was afforded by the policy? Now let us further suppose that the person in charge of the unloading did not actually see the blaze at the moment, but deposited the new adding machine *on top of the lighted floor furnace on November 28th,* and that the lighted floor furnace, almost immediately after the door to the room was closed, burned the new adding machine and set the house on fire? Or suppose it took thirty minutes, or even an hour, before the fire blazed up around the adding machine — would that make any difference, when it was inevitable that sometime soon a burning floor furnace will burn substances placed on top of it?

6. But in the present case, it was not a new adding machine, but an *upholstered sofa,* which is more readily ignited, more highly inflammable, than is an adding machine. Can the insurer say that the sofa *came to rest,* even though on top of a lighted floor furnace, and the "unloading" was complete, even though five minutes later the fire consumed it, as well as other property in the room?

7. The *Fisher* case is readily distinguishable from

the case sub judice, and we hold that the lower court erred in dismissing the complaint, and the judgment of the lower court is therefore reversed.

*Judgment reversed, Pannell, P. J., and Webb, J., concur in the judgment only.*

ARGUED NOVEMBER 6, 1974 — DECIDED JANUARY 29, 1975 — REHEARING DENIED FEBRUARY 13, 1975 —

*Jack M. Smith,* for appellant.

*Long, Weinberg, Ansley & Wheeler, Charles M. Goetz, Jr.,* for appellees.