AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Respondent–Respondent,

v.

SHELTER MUTUAL INSURANCE COMPANY, Appellant–Respondent,

and

James Lee Loethen, James E. Loethen
and Leona Loethen,
Respondents–Appellants.

No. WD 39176.

Missouri Court of Appeals,
Western District.

Jan. 12, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 1, 1988.

Application to Transfer Denied
April 19, 1988.

Duane E. Schriemann, Donald D. Otto, Jr., Jefferson City, for appellant-respondent.

Ronald J. Prenger, Jefferson City, for respondents-appellants.

Erwin L. Milne, Jefferson City, for respondent-respondent.

Before PRITCHARD, P.J., GAITAN and COVINGTON, JJ.

GAITAN, Judge.

Appellant, Shelter Mutual Insurance Co., appeals the trial court's denial of its motion for summary judgment and the court's entry of summary judgment in favor of respondent, American Family Mutual Insurance Co., in a declaratory judgment action to determine which company's insurance policy would furnish coverage for an al-

leged personal injury sustained on the premises of the insured. We affirm.

The facts may be summarized as follows. On April 30, 1985, James Lee Loethen, son of James E. and Leona Loethen, and Gerhard Schillers were carrying an automobile transmission down a driveway to a body shop located at the Loethens' residence. The transmission had been stored in the bed of a pickup truck owned by James E. and Leona Loethen. James Lee Loethen and Gerhard Schillers had carried the transmission approximately 20 to 35 feet down the driveway when Mr. Schillers fell to the ground and the transmission fell on his hand, crushing the hand and severing the little finger from the hand.

At the time of the accident, James Lee Loethen was insured for liability under his parents' homeowners policy issued by respondent, American Family Mutual Insurance Co. He was also insured at that time for liability under his parents' automobile insurance policy issued by appellant, Shelter Mutual Co., which insured the pickup in which the transmission had been stored.

American Family's policy excluded coverage for bodily injury "arising out of the ownership, entrustment, maintenance, operation, use, loading of ... any type of motor vehicle."

Shelter's policy insured James Lee Loethen for liability arising out of the "use" of the described vehicle. "Use" was defined to include "the loading and unloading thereof."

As a result of the accident, Gerhard Schillers filed a damage suit against James Lee Loethen on September 13, 1985. On October 23, 1985, American Family filed a declaratory judgment action against Shelter Mutual Insurance Co., Gerhard Schillers, James Lee Loethen, James E. Loethen and Leona Leothen, seeking a declaration that it had no coverage for the incident and had no duty to defend the suit nor to indemnify James Lee Loethen for any sums which he might become legally obligated to pay as damages. American Family further sought a declaration that Shelter's policy provided coverage for the incident and that Shelter had a duty to defend the suit and indemnify James Lee Loethen for any judgment returned therein, to the extent of its coverage.

As part of the declaratory judgment action, depositions were taken of Gerhard Schillers and James Lee Loethen. Mr. Schillers testified that, at the point in the driveway where he fell, the driveway "was very rutty and had holes in it." He indicated that he and James Lee Loethen had carried the transmission approximately 25 to 35 feet from the pickup when the accident occurred. In describing his fall, Mr. Schillers stated, "Well, the back of my leg, I couldn't move my legs; and all of a sudden I just kind of rolled with the transmission, in—you know what I mean. I just kind of fell to my side and it fell with me." He also testified that he did not believe the condition of the driveway had anything to do with his fall.

In describing the area of the fall, James Lee Loethen testified, "It was rough but it was flat." He indicated that there was nothing about the physical condition of the premises that would have caused Mr. Schillers to fall. In describing Mr. Schillers' fall, James Lee Loethen stated, "Well, we was just walking along sideways down through there and his left leg, it looked like it was, you know, caught or something, and then he went down." Mr. Loethen estimated that he and Mr. Schillers had carried the transmission approximately 20 feet when Mr. Schillers fell. James Lee Loethen testified that, following the accident, Mr. Schillers told him that the heel of his boot had caught in his jeans, causing him to fall.

Subsequently, both American Family and Shelter filed motions for summary judgment on the issue of which insurance company had the duty to defend and indemnify James Lee Loethen. After consideration of both motions, the trial court granted American Family's motion for summary judgment and denied Shelter's motion, holding that the "loading and unloading" clause contained in the motor vehicle liability policy issued by Shelter provided coverage for the alleged personal injuries sustained by Gerhard Schillers to the exclusion of the

homeowners insurance policy issued by American Family. This appeal followed.

On appeal, Shelter contends that the trial court erred in finding that the accident in question came within the coverage provided by the "loading and unloading" clause of its policy. Shelter argues that the accident occurred at a point which was too remotely connected to the immediate act of lifting the transmission from the insured vehicle to be considered part of the unloading process in that Mr. Schillers fell after the transmission had been carried 20 to 35 feet from the pickup truck. Shelter further contends that the causal relation between the accident and the unloading of the vehicle was insufficient to give rise to liability under its policy.

The issue of whether a particular accident comes within the loading and unloading clause of a motor vehicle liability insurance policy covering the vehicle allegedly being unloaded at the time of the accident is typically a question of law, not fact. *See Maryland Casualty Co. v. Dalton Coal & Material Co.*, 184 F.2d 181, 182 (8th Cir. 1950), *aff'g* 81 F.Supp. 895 (D.C.Mo.1949) (applying Missouri law); 6 A.L.R.4th 686 (1981). The threshold inquiry is whether the activities surrounding the accident constituted a loading or unloading of the vehicle. Two doctrines have been used as guides: the "coming to rest" doctrine and the "complete operation" doctrine. Under the "coming to rest" doctrine, "unloading" includes only the actual removing or lifting of the article from the motor vehicle up to the moment when it has come to rest. *See, e.g., Hodges Appliance Co. v. United States Fidelity & Guaranty Co.*, 133 Ga. App. 936, 213 S.E.2d 46 (1975); *American Casualty Co. v. Fisher*, 195 Ga. 136, 23 S.E.2d 395 (1942); *State Automobile & Casualty Underwriters v. Casualty Underwriters, Inc.*, 266 Minn. 536, 124 N.W. 2d 185 (1963); *Senia v. Government Employees Insurance Co.*, 85 Misc.2d 762, 381 N.Y.S.2d 376 (1975). Under the "complete operation" doctrine, "unloading" encompasses all of the operations necessary to effectuate a complete delivery. *See, e.g., Entz v. Fidelity Casualty Co.*, 64 Cal.2d 379, 412 P.2d 382, 50 Cal.Rptr. 190 (1966);

*Woodside v. Gerken Food Co.*, 130 Ill. App.3d 501, 85 Ill.Dec. 811, 474 N.E.2d 771 (1985); *Estes Co. v. Employers Mutual Casualty Co.*, 79 Ill.2d 228, 37 Ill.Dec. 611, 402 N.E.2d 613 (1980); *Travelers Insurance Co. v. Buckeye Union Casualty Co.*, 172 Ohio St. 507, 178 N.E.2d 792 (1961); *State ex rel. Butte Brewing Co. v. District Court of Second Judicial District*, 110 Mont. 250, 100 P.2d 932 (1940); *Drew Chemical Corp. v. American Fore Loyalty Group*, 90 N.J.Super. 582, 218 A.2d 875 (1966); *F & M Schaefer Brewing Co. v. Forbes Food Division*, 151 N.J.Super. 353, 376 A.2d 1282 (1977); *Penley v. Gulf Insurance Co.*, 414 P.2d 305 (Okla.1966); *Cinq–Mars v. Travelers Insurance Co.*, 100 R.I. 603, 218 A.2d 467 (1966); *Travelers Insurance Co. v. Employers Casualty Co.*, 380 S.W.2d 610 (Tex.1964); *Pacific Auto Insurance Co. v. Commercial Casualty Insurance Co.*, 108 Utah 500, 161 P.2d 423 (1945); *United States Fidelity & Guaranty Co. v. Hartford Accident & Indemnity Co.*, 209 Va. 552, 165 S.E.2d 404 (1969). Shelter contends that the interpretation of loading and unloading clauses in motor vehicle liability policies is an unsettled area of Missouri law and urges this court to follow the "coming to rest" doctrine, at least in non-commercial cases. Relying on *Schmidt v. Utilities Insurance Co.*, 353 Mo. 213, 182 S.W.2d 181 (1944), American Family submits that Missouri has adopted the "complete operation" doctrine in interpreting loading and unloading clauses.

In *Schmidt*, drivers of insured coal trucks had left wooden blocks on a sidewalk after using the blocks as a ramp to facilitate the delivery of coal to a coalhole in the sidewalk. Several hours later, a pedestrian tripped and fell over them. The motor vehicle liability policy insuring the trucks included coverage for bodily injury "arising out of" the use of the vehicles. The *Schmidt* court held that the act of placing the wooden blocks on the sidewalk was sufficiently related to the use of the vehicle to deliver coal so as to support a finding that the pedestrian's injuries arose out of the use of the vehicles and, there-

fore, came under the liability coverage of the policy. *Schmidt, supra,* 182 S.W.2d at 185–86.

The court in *Schmidt* never explicitly addressed the issue of whether the "complete operation" doctrine would govern the interpretation of loading and unloading clauses. However, in *Maryland Casualty Co. v. Dalton Coal & Material Co., supra,* 81 F.Supp. at 898, the district court concluded that, based on the authority of *Schmidt,* Missouri followed the "complete operation" doctrine in interpreting "loading and unloading" clauses in motor vehicle liability policies. *See also Maryland Casualty Co. v. Dalton Coal & Material Co., supra,* 184 F.2d at 182. In that case, the driver of the insured coal truck removed the cover of the sidewalk coal chute in order to complete a delivery of coal. The driver improperly replaced the cover and approximately 3½ hours later a pedestrian stepped upon the cover, fell into the opening beneath and was injured. *Id.* at 897. The truck was insured by a motor vehicle liability policy which provided coverage for bodily injury arising out of the use of the vehicle, and which defined "use" to include loading and unloading activities. The court held that the pedestrian's injuries were covered because the act of replacing the cover was an integral part of the unloading process. *Id.* at 898.

■ Notwithstanding the holding in *Maryland Casualty Co.,* we are not persuaded that *Schmidt* can be read to adopt the "complete operation" doctrine for determining whether activities surrounding an accident are covered by the "loading and unloading" clause of a particular motor vehicle liability policy. Rather, we find that *Schmidt* falls into a third category of cases that has been decided without reference to either the "coming to rest" or "complete operation" doctrine, but which relies instead on whether a sufficient causal nexus exists between the activities surrounding an accident and the use of the insured vehicle. *See e.g., Mission Insurance Co. v. Aid Insurance Services,* 120 Ariz. 220, 585 P.2d 240 (1978); *Industrial Indemnity Co. v. General Insurance Co.,* 210 Cal.App.2d 352, 26 Cal.Rptr. 568 (1962); *Viani v. Aetna Insurance Co.,* 95 Idaho 22, 501 P.2d 706 (1972); *Bituminous Casualty Corp. v. American Fidelity & Casualty Co.,* 22 Ill.App.2d 26, 159 N.E.2d 7 (1959); *Celina Mutual Insurance Co. v. Citizens Insurance Co.,* 136 Mich.App. 315, 355 N.W.2d 916 (1984); *Wakefern Food Corp. v. General Accident Group,* 188 N.J.Super. 77, 455 A.2d 1160 (1983); *Continental Casualty Co. v. Duffy,* 26 A.D.2d 630, 272 N.Y.S.2d 470 (1966); *Lyndoe v. American Standard Insurance Co.,* 90 S.D. 644, 245 N.W.2d 273 (1976). The appropriate test to be applied is:

> whether the negligent act and resulting injury was a natural and reasonable incident or consequence of the use of the trucks for the purposes shown by the declarations [in the policy], though not foreseen or expected; and whether, after the negligent acts and injury were complete, it was possible to trace the negligent acts and resulting injury as reasonably incident to, and closely connected with, the use of the trucks for the purposes shown in the declarations in the policy.

*Schmidt, supra,* 182 S.W.2d at 184. Moreover, in defining the scope of the term "use", *Schmidt* holds that the "words 'arising out of * * * use' are very broad, general and comprehensive terms ... [and the] "words 'arising out of' ... are ordinarily understood to mean 'originating from' or 'having its origin in', 'growing out of' or 'flowing from' ...'", and although proximate causation in the strict legal sense is not required, there must be some causal connection between an injury and the "use" of a vehicle in order for there to be coverage. *Schmidt, supra,* 182 S.W.2d at 183–84. *See also Cameron Mutual Insurance Co. v. Ward,* 599 S.W.2d 13, 15 (Mo.App. 1980).

■ The same principles that apply to "use" apply to loading and unloading activities when "use" is defined to include those activities. Applying these principles to the instant case, we find that Gerhard Schiller's injuries were incident to and a consequence of the unloading of the Loethen's pickup truck. Gerhard Schillers was as-

sisting James Lee Loethen in removing an automobile transmission from the truck on the Loethen property. The truck had been used to pick up, transfer and deliver the transmission to the Loethen property for installation in James Lee Loethen's car. The use of the truck was necessary to deliver the transmission, and without the use of the truck, the transmission would not have been located on the premises. James Lee Loethen requested the assistance of Gerhard Schillers to unload the transmission from the truck into the body shop. While in the process of carrying the transmission to the shop, Gerhard Schillers fell and was injured when the transmission dropped on his hand. The undisputed facts, as testified to by both Gerhard Schillers and James Lee Leothen, clearly establish that Schillers' injuries would not have occurred but for the unloading of the transmission. We find nothing in the policy requiring that the unloading activities be the direct and proximate cause of an injury in order for there to be coverage. *See Suburban Service Bus Co. v. National Mutual Casualty Co.*, 237 Mo.App. 1128, 183 S.W.2d 376, 378 (1944). Accordingly, we hold that the accident in which Gerhard Schillers was injured arose out of the unloading of the pickup truck within the meaning, intent and purpose of the motor vehicle liability policy issued by Shelter.

In its second point on appeal, Shelter claims that, even if this Court finds that Shelter has a duty to defend and indemnify James Lee Loethen under its policy, the trial court erred in releasing American Family from liability because the allegations contained in Gerhard Schillers' Petition state a claim which comes within the coverage provided by the homeowner's policy issued by American Family. Shelter contends that the allegation that James Lee Loethen was negligent in failing to provide a safe walkway for Schillers to carry the transmission states a claim under a premises liability theory which American Family has a duty to defend.

Ordinarily, a liability insurer's duty to defend is determined by comparing the insurance policy provisions with the allegations of the petition or complaint in the action brought by the plaintiff against the insured. *Butters v. City of Independence*, 513 S.W.2d 418, 424 (Mo.1974); *Zipkin v. Freeman*, 436 S.W.2d 753, 754 (Mo. banc 1968). If the petition states some grounds for liability covered by the insurance policy, the duty to defend exists. *Butters v. City of Independence, supra*, 513 S.W.2d at 424. However, "a liability insurer's duty to defend does not depend alone upon the allegations of the petition filed against the insured." *Travelers Insurance Co. v. Cole*, 631 S.W.2d 661, 665 (Mo.App.1982). *See also Hawkeye–Security Insurance Co. v. Iowa National Mutual Insurance Co.*, 567 S.W.2d 719, 721 (Mo.App.1978). If additional facts are ascertained which indicate that the claim does not fall within the coverage of the policy, the insurer is not obligated to provide a defense. *Travelers Insurance Co. v. Cole, supra*, 631 S.W.2d at 665; *Hawkeye–Security Insurance Co., supra*, 567 S.W.2d at 721.

In the present case, additional undisputed facts were presented to the trial court which revealed that the condition of the driveway did not cause the accident in which Gerhard Schillers was injured. When Gerhard Schillers was asked if he believed the driveway had anything to do with his fall, he replied, "Not really." Schillers' testimony was corroborated by James Lee Loethen who stated that he had not seen anything about the driveway that would have caused Gerhard Schillers to trip. Given these facts, the trial court did not err in concluding that American Family was not required to defend.

Under the standard articulated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), this Court must sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. No error appears.

The judgment of the trial court is affirmed.

All concur.